[Cite as *State v. Wiesenborn*, 2019-Ohio-4487.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28224 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-864 |
| | : | |
| ZAREN P. WIESENBORN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 1st day of November, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-Appellant, Zaren Wiesenborn, appeals from his conviction and sentence on 13 counts of rape, 13 counts of gross sexual imposition (by force), and seven counts of kidnapping (sexual activity). After Wiesenborn pled no contest to all the charges, the trial court sentenced him (after merging some offenses) to 78.5 years in prison.

{¶ 2} Wiesenborn contends that the trial court erred in sentencing him to 78.5 years in prison because the record does not support consecutive sentences. In addition, he contends that his no contest pleas were not made knowingly, intelligently, and voluntarily because he was told that he was eligible for community control sanctions.

{¶ 3} We find that the trial court did not err in sentencing Wiesenborn. Although the time at which Wiesenborn will be eligible to move for judicial release under the combination of sentences for his juvenile and adult crimes exceeds his life expectancy, the sentence on the juvenile offenses would allow him to be released when he is 52 years old; thus, the sentence did not violate *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127. Also, the trial court did not err in instructing Wiesenborn with respect to his no-contest plea, and the plea, therefore, was made knowingly, intelligently, and voluntarily. The judgment of the trial court is affirmed.

I. Facts and Course of Proceedings

{¶ 4} On March 1, 2018, Dayton Police Officers Jamie Luckowski and Bryan Camden were dispatched to an address in Dayton, Ohio, for a welfare check. The police had received a call from a gentleman who had been speaking with his online girlfriend via

video chat and had seen some things happen between the girlfriend, "Audrey,"[1] and her brother, Wiesenborn. When the police arrived, Audrey answered the door. Audrey was a "smaller 17-year-old female" who appeared to have some disabilities. She had difficulty speaking, was "partially handicapped," and had trouble walking. The police explained why they were there and said they had received a call from a gentleman in another state, who asked them to check on her.

{¶ 5} Audrey said she was okay, but the officers could tell "something was wrong" and inquired further. Audrey indicated she had been in a disagreement with her brother and that he had perhaps touched her inappropriately.[2] She pointed to her chest and the officers then asked if the brother had touched her on the chest. Audrey said yes.

{¶ 6} After learning that Audrey's parents were not home, the officers asked if they could speak with Wiesenborn. Audrey took them up to the third floor of the home and told Wiesenborn that someone was there to see him. Wiesenborn said "Who the f*ck is it?" As soon as Wiesenborn realized that police officers were there, his attitude immediately changed, and he became calm and well-spoken.

{¶ 7} When the police officers spoke with Wiesenborn, he admitted that after getting into an argument with Audrey, he dragged her across the room, pinned her on the floor, lifted her skirt, and sexually fondled her breasts. Wiesenborn was then taken into custody and transported to jail. At the time, Wiesenborn was a senior in high school and was 19 years old.

---

[1] For privacy reasons, we will refer to the victim as "Audrey." This is not her real name.

[2] According to the record, Audrey and Wiesenborn were adopted and were biologically unrelated.

{¶ 8} Subsequently, Audrey told the police that on multiple occasions, Wiesenborn forcibly removed her from her room, took her clothes off, and attempted to place his penis into her vagina.   He had also licked her vagina and had forced her to perform oral sex. During an interview with Detective Spears, Wiesenborn admitted to raping Audrey against her will.   Wiesenborn further said that Audrey was not able to get away from him due to being pinned or being fearful.   He admitted that he liked feeling the power of control over Audrey and did these things as punishment for her aggravating him at home or at school.

{¶ 9} On April 5, 2018, an indictment was filed charging Wiesenborn with having committed six counts of rape between November 30, 2016 and February 28, 2018.   He was also charged with three counts of gross sexual imposition and two counts of kidnapping during the same time period.   In addition, Wiesenborn was charged with one count of gross sexual imposition and one count of kidnapping with respect to the incident on March 1, 2018.

{¶ 10} After Wiesenborn pled not guilty, his appointed counsel filed a motion to suppress statements that Wiesenborn made to the police.   Counsel also filed a motion for a competency and sanity evaluation.   On July 9, 2018, after receiving the evaluation, the court found Wiesenborn competent to stand trial.   The court then held a hearing on the motion to suppress and filed a decision in August 2018 overruling the motion.

{¶ 11} In September 2018, the State filed a reindictment, adding additional charges for earlier dates.   With respect to the time period of January 4, 2013 through September 1, 2014, Wiesenborn was charged with two counts of kidnapping and six counts of gross sexual imposition.   Concerning the time period from September 2, 2014 through November 29, 2016, Wiesenborn was charged with three counts of gross sexual

imposition, two counts of kidnapping, and seven counts of rape. These charges all resulted from events that occurred when Wiesenborn was between the ages of 14 and 17. Wiesenborn pled not guilty to these charges as well.

{¶ 12} The State did not present any plea offers to Wiesenborn, nor did it accept any of the offers that Wiesenborn made. On October 4, 2018, Wiesenborn pled no contest to all the charges (13 counts of rape, felonies of the first degree; seven counts of kidnapping (sexual activity), felonies of the first degree; and 13 counts of gross sexual imposition (by force), felonies of the fourth degree). The court accepted Wiesenborn's plea and found him guilty. On October 30, 2018, the trial court imposed less-than-maximum sentences but imposed all sentences consecutively. This resulted in a prison term of 78.5 years. The court also classified Wiesenborn as a Tier I and III sex offender. Before the judgment entry was filed, Wiesenborn filed a motion to withdraw his plea, but the court did not rule on it.[3] Wiesenborn then filed a notice of appeal in December 2018.

I. Alleged Sentencing Errors

{¶ 13} Wiesenborn's First Assignment of Error states that:

The Trial Court Erred in Sentencing the Defendant.

{¶ 14} Under this assignment of error, Wiesenborn first contends that the record does not support the trial court's imposition of consecutive sentences. Specifically, Wiesenborn had no criminal record, was 19 years old at the time of sentencing, and expressed remorse. In addition, the majority of the charged offenses (20 out of 33) took

---

[3] The effect of the court's failure to rule is that the motion is still pending in the trial court, and the court can rule on the motion after our opinion in this case has been released. *See State v. Wilson*, 2d Dist. Montgomery No. 25482, 2014-Ohio-1764, ¶ 15-26.

place when he was a juvenile. In this regard, Wiesenborn argues that if his behavior had been addressed while he was a juvenile, he would likely have received treatment in an effort to rehabilitate him. Instead, when Audrey told their parents about the problem, the parents failed to intervene. The abuse then came to light after Wiesenborn turned 18.

{¶ 15} On appeal, defendants can challenge consecutive sentences in two ways. "First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4)." (Emphasis omitted.) *State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, ¶ 17, citing R.C. 2953.08(G)(2)(b) and *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29. "Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4)." *Id.*, citing R.C. 2953.08(G)(2)(a) and *State v. Moore*, 2014-Ohio-5135, 24 N.E.3d 1197 (8th Dist.). In this case, Wiesenborn does not assert that the trial court failed to make the findings that R.C. 2929.14(C)(4) requires.

{¶ 16} Regarding the second type of challenge, and as pertinent here, "R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under * * * 'division * * * (C)(4) of section 2929.14 * * * of the Revised Code.' " *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting R.C. 2953.08(G)(2). " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of fac[t] a firm belief or conviction as to the facts sought to

be established.' " *Id.*, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 17} "R.C. 2929.14(C)(4) is an exception to the presumption in favor of concurrent sentences in R.C. 2929.41(A)." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 29 (2d Dist.). As relevant here (according to the trial court's findings), R.C. 2929.14(C)(4) provides that:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> * * *
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 18} In imposing consecutive sentences, the trial court made the following statements, in addition to using the appropriate statutory language:

> * * * Mr. Wiesenborn, your statement just now was one that started with the alleged charges. You indicated that – well, at the end of several minutes

that you were sorry. Having watched you throughout the sentencing hearing this morning, through the statements made by [Audrey], your only reaction during those statements [was] when she asked for life without parole. Now, that's a sentence that's not permitted by law, but that was the only reaction.

Mr. Wiesenborn, your letter and your statements of remorse ring hollow. Your admissions of enjoying power and punishing your sister by raping and molesting her for years are loud and clear.

You stated just now you hadn't cried in two years. You made [Audrey] cry for years. You abused, assaulted and tortured her for almost a third of her life. Those offenses started when you were a juvenile as well. They stopped and then they started again. At any point, you knew what you were doing was wrong. At some point, you knew what you were doing was wrong. You shattered and trampled her trust as her older adoptive brother.

The fact that [your parents] knew about the offenses and not only did nothing, but then permitted it to happen because they couldn't be bothered to go upstairs and their treatment of [Audrey] since this indictment and since her removal from home frankly is sickening.

Their indifference though does not, as repugnant as it is, forgive you for your actions. You knew what you were doing when you were systematically torturing her for years.

Transcript of Proceedings ("Tr."), Sentencing Hearing, pp. 86-87.

{¶ 19} After reviewing the record, we cannot say that consecutive sentences were

clearly and convincingly unsupported by the record. According to the presentence investigation report ("PSI"), Audrey indicated that when she was younger, Wiesenborn looked up pornography and made her watch it. She further said that what she saw made her sick, but after Wiesenborn turned it off, he tried to mimic the video. Audrey indicated that Wiesenborn did this frequently and would remove her clothes forcefully. She tried to resist, but could not fight back because she was younger and more frail. After removing Audrey's clothes, Wiesenborn would try to put his penis in her vagina but it did not work because she was small. He would then digitally penetrate her, lick her vagina, and force her mouth open while putting his penis in her mouth.

{¶ 20} This conduct began when Audrey was 12 or 13 years old and happened on a weekly basis, at times every other week. After the initial events, Audrey told her parents, who spoke with Wiesenborn and told him it was not right and that he could go to jail. While these assaults stopped for a time, they eventually started again. Audrey's father admitted knowing of the previous incidents and spoke with Wiesenborn, who said he would not do those things any longer. However, the parents did not obtain any counseling for Audrey, and when they heard commotion upstairs, Wiesenborn claimed he was doing laundry (Audrey's room was next to the laundry machines). The parents apparently did not bother to check.

{¶ 21} During questioning by the police, Wiesenborn admitted tormenting and sexually molesting Audrey. He further admitted that he "got really excited when he felt he had power and authority." He also attempted to blame Audrey for some of the conduct, claiming that she watched pornography on her own volition with him when she was 13 years old and that she wanted to try some of the things they saw on the computer.

In addition, Wiesenborn stated during the presentence investigation that sometimes Audrey initiated sexual conduct, and that she was making claims due to a "revenge" plan against him and his family, because they were not involved in Audrey's personal life and were involved in his extracurricular activities.

{¶ 22} The PSI further indicated that Audrey's parents pressured her during the proceedings to drop the charges and told her that if she continued, the family would be torn apart and she would have to enter another foster home. Audrey ended up in another foster home.

{¶ 23} In view of the record, Wiesenborn clearly lacked remorse and tried to blame Audrey for the sexual assaults, which occurred repeatedly over a number of years. Although Wiesenborn did not have a criminal record, it is only because he intimidated Audrey and because his parents did not take appropriate steps to protect her.

{¶ 24} In addition to arguing that consecutive sentences were not supported by the record, Wiesenborn contends that his sentence was unconstitutional under the Eighth Amendment. In support of this argument, Wiesenborn cites *Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127.

{¶ 25} As the current sentence stands, Wiesenborn would be eligible to file a motion for judicial release "not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified" in R.C. 2929.20(C)(4). R.C. 2929.20(C)(5). The date specified in R.C. 2929.20(C)(4) is "not earlier than five years after the expiration of all mandatory prison terms."

{¶ 26} Under the convictions from the initial indictment, 30 years in prison were mandatory, based on the five-year sentences imposed for each of the six rape

convictions. For the convictions from the second or reindictment, 28 more years in prison were mandatory, based on the four-year sentences imposed for each of the seven juvenile rape convictions. Thus, Wiesenborn would be eligible to file a motion for judicial release on the *later* of the following: (1) one half of the stated prison term, i.e., 39.25 years, or (2) completion of the 58 years of mandatory sentences plus five years, i.e., 63 years (minus the 244 days of jail credit he received for time spent in confinement). At that time, Wiesenborn would be 81 or 82 years old, as he was 19 years old at the time of sentencing.

{¶ 27} The State argues that *Moore* does not apply because Wiesenborn committed one or more crimes as an adult. In addition, the State contends that the sentence is not divisible and that Wiesenborn's juvenile sentence cannot be separated out to conduct the test in *Moore*.

{¶ 28} "The Eighth Amendment to the United States Constitution states, 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' A key component of the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' *Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). 'Protection against disproportionate punishment is the central substantive guarantee of the Eighth Amendment.' *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718, 732-733, 193 L.Ed.2d 599 (2016)." *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 31.

{¶ 29} "It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading

punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). "There are two classifications of proportionality review – one involving the length of term-of-years sentences given in a particular case and the other involving categorical restrictions." *Moore* at ¶ 32.

{¶ 30} A proportionality review based on categorical restrictions involves " 'cases in which the Court implements the proportionality standard by certain categorical restrictions.' " *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 26, quoting *Graham v. Florida*, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825. "Within that classification, there are two subsets, 'one considering the nature of the offense, the other considering the characteristics of the offender.' " *Id.* at ¶ 27, quoting *Graham* at 60. "The court engages in a two-step process in adopting categorical rules in regard to punishment: first, the court considers whether there is a national consensus against the sentencing practice at issue, and second, the court determines 'in the exercise of its own independent judgment whether the punishment in question violates the Constitution. ' " *Id.* at ¶ 29, quoting *Graham* at 61.

{¶ 31} *Moore* involved a "categorical restriction." *Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 32. The defendant was 15 years old at the time of his crimes, and was sentenced to 141 years in prison on 12 counts, including three counts of rape, three counts of aggravated robbery, three counts of complicity to commit rape, one count of kidnapping, one count of conspiracy to commit aggravated robbery, one count of aggravated menacing, and 11 firearm specifications. *Id.* at ¶ 12. All the crimes involved one victim, and the trial court told Moore that it wanted to make sure he

never got out of the penitentiary.   *Id.* at ¶ 13.   Ultimately, Moore was resentenced, but still received a term of 112 years, and the trial court again stressed its intent to make sure Moore never left prison.   *Id.* at ¶ 17.   The case then ultimately came before the Supreme Court of Ohio.

{¶ 32} In addressing the issues, the Supreme Court of Ohio first observed that due to mandatory sentences for the rapes and gun specifications, Moore would not be eligible to seek judicial release until he was 92 years old.   This would exceed his life expectancy of around 54.9 years.   *Moore* at ¶ 30.

{¶ 33} The court then noted that in a recent decision, the United States Supreme Court had "prohibited the imposition of life-without-parole sentences on juvenile offenders who did not commit homicide."   *Id.* at ¶ 33, citing *Graham*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825.   While *Graham* did not address "whether a term-of-years prison sentence that extends beyond an offender's life expectancy – a functional life sentence – falls under the *Graham* categorical bar," the Supreme Court of Ohio concluded that "*Graham* does establish a categorical prohibition of such sentences."   *Id.* at ¶ 34.

{¶ 34} In explaining its rationale, the court focused on a number of factors distinguishing juveniles.   First, due to their age and the nature of the crime, juveniles who do not kill nor intend to kill have " 'twice diminished moral culpability.' "   *Id.* at ¶ 36, quoting *Graham* at 69.   Concerning the crime's nature, the court noted that " '[a]lthough an offense like robbery or rape is "a serious crime deserving serious punishment," * * * those crimes differ from homicide crimes in a moral sense,' such that nonhomicide defendants 'are categorically less deserving of the most serious forms of punishment than are murderers.' "   *Id.*, quoting *Graham* at 69.   (Other citation omitted.)

{¶ 35} As to the "characteristics of youth," which indicate that "a depraved crime committed by a youth may not be indicative of an irredeemable individual," the court focused on three salient factors that cause juveniles to be "less morally culpable than adults." *Id.* at ¶ 37-38. These included: (1) an underdeveloped sense of responsibility and lack of maturity, which leads to impulsivity, recklessness, and risk-taking; (2) children's vulnerability to outside pressure and negative influences, which include their peers and family, as well as limited control over their environment and their lack of " 'ability to extricate themselves from horrific, crime-producing settings' "; and (3) the fact that children's characters are not fully formed, their traits are not as fixed as those of adults, and their actions are not as likely to indicate depravity that is irretrievable. *Id.* at ¶ 37, quoting *Miller v. Alabama*, 567 U.S. 460, 471, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). (Other citation omitted.)

{¶ 36} The Supreme Court of Ohio further observed in *Moore* that "[t]he inherently diminished moral culpability and other characteristics of juvenile offenders means that the recognized, legitimate goals of penal sanctions – retribution, deterrence, incapacitation, and rehabilitation – do not justify the imposition of the harshest penalties on juveniles who have committed nonhomicide crimes." *Id.* at ¶ 39. Additionally, the court stressed that "[t]he most important attribute of the juvenile offender is the potential for change. *Graham* relates the difficulty in determining whether the commission of a crime is the result of immaturity or of irredeemable corruption. And so *Graham* protects juveniles categorically from a final determination while they are still youths that they are irreparably corrupt and undeserving of a chance to reenter society." *Id.* at ¶ 42.

{¶ 37} Notably, the court stressed that *Graham* "does not guarantee an eventual

release." Instead, the State must " 'give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " *Id.* at ¶ 44. While *Graham* involved juvenile offenders sentenced to life imprisonment without parole for non-homicide offenses, the court found that the same factors ("the lessened moral culpability of juvenile offenders, the severity of the sentence, and the inapplicability of penological justifications for life sentences for juveniles as reasons for declaring life sentences for juvenile nonhomicide offenders unconstitutional under the Eighth Amendment") also "apply to term-of-years prison sentences that exceed a juvenile offender's expected lifespan." *Id.* at ¶ 49. Accordingly, the court remanded the case to the trial court for resentencing. *Id.* at ¶ 100.

{¶ 38} Ohio courts have rejected the extension of *Graham* to offenders who are 18 years of age or older. *See Ohio v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 52-53 (8th Dist.), citing *State v. Phipps*, 10th Dist. Franklin No. 15AP-524, 2016-Ohio-663, *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135 (8th Dist.), and *State v. Rolland*, 7th Dist. Mahoning No. 12 MA 68, 2013-Ohio-2950. However, none of these cases involved the type of hybrid situation involved in the case before us.

{¶ 39} The Supreme Court of Ohio has also said that "[w]here none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073 (2008), syllabus.

{¶ 40} In *Hairston*, a 24-year old defendant was sentenced to a 134-year prison term based on "guilty pleas to four counts of aggravated robbery, four counts of

kidnapping, three counts of aggravated burglary, all with firearm specifications, and three counts of having a weapon while under disability." *Id.* at ¶ 1. The charges were based on three home invasions that occurred within a period of about one month. *Id.* at ¶ 3-5. However, each of the individual prison terms were within the range that the General Assembly had authorized. *Id.* at ¶ 20. As a result, the Supreme Court of Ohio concluded that the sentences were not "grossly disproportionate," nor were they "shocking to a reasonable person or to the community's sense of justice." *Id.* at ¶ 23. Again, however, the defendant in *Hairston* was not being held responsible for conduct as a juvenile.

{¶ 41} After *Moore*, the Eighth District Court of Appeals reversed a 50-year sentence of a defendant who had been convicted of a rape he committed when he was 17 years old, and remanded the case for resentencing. The court commented that "[t]he standard is whether the nonhomicide juvenile offender has a meaningful opportunity for parole." *State v. Strowder*, 8th Dist. Cuyahoga No. 105569, 2018-Ohio-1292, ¶ 44.

{¶ 42} In *State v. Watkins*, 2018-Ohio-5137, 126 N.E.3d 381 (10th Dist.), the defendant was 16 years old at the time of his charged offenses, which included "six counts of aggravated robbery in violation of R.C. 2911.01, six counts of robbery in violation of R.C. 2911.02, six counts of kidnapping in violation of R.C. 2905.01, two counts of rape in violation of R.C. 2907.02, and two counts of gross sexual imposition in violation of R.C. 2907.05. These counts all contained a firearm specification pursuant to R.C. 2941.145." *Id.* at ¶ 3. On the morning of trial, the defendant pled guilty to "five counts of aggravated robbery, and one count each of robbery, sexual battery, and gross sexual imposition, as well as three firearm specifications," and was sentenced to a total prison term of 67 years.

*Id.* at ¶ 4-5.

**{¶ 43}** After the Tenth District Court of Appeals affirmed the trial court's judgment, the Supreme Court of Ohio accepted the defendant's appeal and held it for the decision in *Moore*. *Id.* at ¶ 7. Following that decision, the court reversed the judgment of the court of appeals and remanded it for further consideration based on *Moore*. *Id.* at ¶ 8.

**{¶ 44}** On reconsideration, the court of appeals noted that on completion of his full sentence, the defendant would be 85 years old. The court further observed that because his "aggregate sentence exceeds his life expectancy, the constitutionality of his sentence under the Eighth Amendment turns on whether he has a meaningful opportunity to demonstrate maturity and rehabilitation prior to the completion of his sentences." *Id.* at ¶ 24. The court then focused on the mandatory terms. Because only nine years of the sentence was mandatory, the court found that the defendant would be eligible for judicial release under R.C. 2929.20(C)(5) after serving 33 and one-half years, which would be when he was 50 years old. *Id.* at ¶ 25.

**{¶ 45}** The court then found that the potential for judicial release at that age would provide the defendant with "a reasonable opportunity to demonstrate maturity and rehabilitation so that he can reenter society with enough time left for a meaningful life outside of prison." *Id.* Furthermore, the court stressed that, unlike Moore, who was offered only " 'the prospect of geriatric release,' " the defendant in *Watkins* would have "the opportunity to demonstrate maturity and rehabilitation at an age when most people are still in good health and in their prime working years." *Id.* at ¶ 28. As a result, the court found that the sentence did not violate the Eighth Amendment as *Moore* and *Graham* had interpreted it. *Id.* at ¶ 32.

{¶ 46} We have read all the Ohio cases citing *Moore* and have not found any that involve offenses that occurred both before and after the age of 18. We reject the State's contention that *Moore* is wholly inapplicable because Wiesenborn committed some crimes as an adult. The fact that youthful crimes existed cannot be entirely discounted. In applying *Moore*, we find it necessary to focus on Wiesenborn's eligibility for release for the juvenile portion of the sentence rather than the total.

{¶ 47} In the case before us, seven counts of rape (with total mandatory sentences of 28 years) involved events that occurred when Wiesenborn was between the ages of 15 and 17. Wiesenborn's earliest age for judicial release eligibility for those convictions would be around age 52 (19 plus 28 plus five), which is within the limits that have been held appropriate.

{¶ 48} The total mandatory sentence for the six rapes that occurred after Wiesenborn turned 18 years old was 30 years. As noted earlier, due to the consecutive nature of the sentences, and the statutory provisions for judicial release, the earliest Wiesenborn can apply for judicial release is when he is 81 or 82. A non-Hispanic black male who was 18 years of age in 2017 had a life expectancy of 71.5 years. *See* U.S. Department of Health and Human Services, National Vital Statistics Reports, Vol. 68, No. 9, at 10, https://www.cdc.gov/nchs/data/nvsr/nvsr68/nvsr68_09-508.pdf (accessed Oct. 23, 2019).[4] However, Wiesenborn's sentence exceeds his life expectancy only as a result of the 30 year sentence imposed for offenses committed when he was an adult.

{¶ 49} The positions argued by both parties would bring unreasonable results.

---

[4] The most recent volume, which was published in August 2019, covers the year 2017. Thus, we have calculated from 2017, when Wiesenborn was 18 years old. The PSI indicates that Wiesenborn is African-American.

We reject Wiesenborn's argument because, for example, if a defendant were sentenced for 20, first-degree felony non-homicide offenses committed as an adult and one fifth-degree felony offense committed as a juvenile, *Moore* would apply. We reject the State's argument because if 20 of such offenses were committed as a juvenile and one as an adult, the defendant would be deprived of the protection of *Moore*.

{¶ 50} Consequently, we conclude that the appropriate procedure when applying *Moore* for a sentence imposed for crimes committed both when the defendant was a juvenile and an adult is to determine whether the sentence imposed for the juvenile offenses exceeds the defendant's life expectancy. Since Wiesenborn will be eligible for release at age 52 as a result of the sentences imposed for offenses he committed as a juvenile we find that *Moore* does not apply.

{¶ 51} The trial court considered Wiesenborn's age in imposing the sentence. Wiesenborn's attorney argued at sentencing that the Court should consider that 60% of the offenses were committed when he was a juvenile. Tr. p. 82. When addressing Wiesenborn as the sentence was imposed, the Court noted that "those offenses started when you were a juvenile as well." Tr. p. 86. All of the sentences imposed for offenses committed by Wiesenborn when he was a juvenile were less than those imposed for the same adult crimes.

{¶ 52} Accordingly, the First Assignment of Error is overruled.


III.   The Plea

{¶ 53} Wiesenborn's Second Assignment of Error states that:

Zaren Wiesenborn's Pleas Were Not Made Knowingly, Intelligently,

and Voluntarily.

{¶ 54} Under this assignment of error, Wiesenborn contends that his plea was not made knowingly, intelligently, and voluntarily because he was informed in the plea forms for gross sexual imposition and kidnapping that he was eligible to be sentenced to community control. He notes that because he pled to 13 counts of rape, with mandatory sentences, community control sanctions were not possible.

{¶ 55} "To be constitutionally valid and comport with due process, a guilty plea must be entered knowingly, intelligently, and voluntarily." *State v. Bateman*, 2d Dist. Champaign No. 2010CA15, 2011-Ohio-5808, ¶ 5, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Compliance with the procedures mandated by Crim.R. 11(C) when a defendant enters a plea of guilty or no contest to a felony charge, absent any indicia of coercion, creates a presumption that the plea was knowing, intelligent, and voluntary." *State v. Ogletree*, 2d Dist. Montgomery No. 21995, 2008-Ohio-772, ¶ 7.

{¶ 56} "Literal compliance with Crim.R. 11 is certainly the preferred practice, but the fact that the trial judge did not do so does not require vacation of the defendant's guilty plea if the reviewing court determines that there was substantial compliance." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* "Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and

voluntarily made must show a prejudicial effect." *Id.*, citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977) and Crim.R. 52(A). "The test is whether the plea would have otherwise been made." *Id.*

{¶ 57} In the case before us, our review of the record indicates that the trial court fully complied with the requirements of Crim.R. 11(C). Among other things, this rule requires trial courts to address defendants personally and determine that they are "making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a).

{¶ 58} According to the record, Wiesenborn initially appeared in court on October 2, 2018, and entered pleas of no contest to the charges. However, because there were questions about whether a mandatory sentence for first-degree rape was required, the trial court held a second plea hearing on October 4, 2018. Tr., Plea Hearing, at p. 46. During this hearing, Wiesenborn said he understood that first-degree rapes required a mandatory prison term. *Id.* at pp. 46-47. After securing Wiesenborn's understanding, the court stated that it would go over the entire plea process again. *Id.* at p. 47.

{¶ 59} Among other things, Wiesenborn stated that he had reviewed the plea forms with counsel, and that counsel had clarified them. *Id.* at p. 48. The plea form for the rape charges clearly stated that prison terms were mandatory and that Wiesenborn was not eligible for community control sanctions. *See* Doc. #86, p. 1. The plea forms for the kidnapping and gross sexual imposition charges did state that Wiesenborn was eligible for community control sanctions. *See* Doc. # 87, p. 1 and Doc. #88, p. 1. However, in

discussing the kidnapping and gross sexual imposition felonies, the trial court said: "Now, do you understand on the first degree rape, because of the mandatory nature of a prison term, that you are not eligible for those community control sanctions on those counts?" Tr., Plea Hearing, at p. 52. Wiesenborn responded, "Yes sir." *Id.* at p. 53.

{¶ 60} Consequently, the trial court properly informed Wiesenborn about community control, and the court did comply with Crim.R. 11(C)(2)(a). As a result, Wiesenborn's Second Assignment of Error is without merit and is overruled.


## IV. Conclusion

{¶ 61} Wiesenborn's First and Second Assignments of Error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


HALL, J., concurs.

DONOVAN, J., dissents:

{¶ 62} I disagree with the majority's resolution of the first assignment of error. A sentence of de facto life without parole is indeed just for certain adult non-homicide offenders; Wiesenborn is not one of them. The controlling inquiry herein is not simply whether Wiesenborn's sentence provides for parole eligibility within his lifetime, but whether his sentence impinges on the same substantive concerns that make the imposition of a life sentence without parole on juvenile non-homicide offenders impermissible under the Eighth Amendment. In the hybrid scenario which confronts us

(combined juvenile and adult offenses), Eighth Amendment review must be rigorous. Youth and its attendant circumstances were not considered by the trial court. Since Wiesenborn's eligibility to move for judicial release under the combination of sentences for juvenile and adult offenses exceed his life expectancy, his 78½ year sentence violates *Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, as well as a litany of U.S. Supreme Court cases.

{¶ 63} Countless recent cases have signaled salutary judicial recognition of the relevance to punishment of blameworthiness. These cases draw a sharp distinction between offenses committed by a juvenile as opposed to offenses committed by an adult. Although the United States Supreme Court itself has characterized its punishment jurisprudence as lacking a "unifying principle," *Kennedy v. Louisiana,* 554 U.S. 407, 436-37, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), the message over the last decade and beyond is clear: "youth matters." *Miller v. Alabama,* 567 U.S. 460, 473, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *see also Graham v. Florida*, 560 U.S. 48, 76, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In fact, Justice O'Connor noted in *Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed. 290 (1993):

> * * * I had thought we made clear in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) that the vicissitudes of youth bear directly on the young offender's culpability and responsibility for crime:
>
> > "[Y]outh is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are

less mature and responsible than adults. Particularly during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment expected of adults." *Id.* at 115-116, 102 S.Ct., at 877 (footnotes and internal quotation marks omitted.)

See also Graham [v. Collins], 506 U.S. [461] at 518, 113 S.Ct., at 924 (SOUTER, J., dissenting) ("Youth may be understood to mitigate by reducing a defendant's moral culpability for the crime, for which emotional and cognitive immaturity and inexperience with life render him less responsible.")

*Id.* at 376 (O'Connor, J., dissenting.); *see also Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) ("Three general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders.").

**{¶ 64}** "There is no dispute that a defendant's youth is a relevant mitigating factor." *Johnson* at 367. An offender's youth must be an articulated consideration in the sentencing analysis in cases which result in de facto life imprisonment where the court is sentencing both for juvenile and adult conduct. " '[J]ust as the chronological age of a minor is itself a relevant mitigating factor of great weight, so must the background and mental and emotional development of a youthful defendant be duly considered' in assessing his culpability." *Miller* at 476, quoting *Eddings* at 116.

**{¶ 65}** This record affirmatively establishes that an inexperienced trial judge completely ignored the law embodied in *Roper, Miller, Graham, Eddings,* and *Moore* and

all the other doctrinal implications of youthful offender caselaw. The trial court focused entirely on aggravating factors and the nature of the offenses. It was lost on the trial court that culpability belongs to the offender and not the offenses. "[T]he typical characteristics of youth, which include immaturity, impetuosity, and poor risk assessment, are to be regarded as mitigating, not aggravating factors." *State v. Null*, 836 N.W.2d 41, 75 (Iowa 2013), citing *Miller* at 475-480. Significantly, the solitary reference to Wiesenborn's age by the trial court was actually articulated in the context of aggravation, not mitigation:

> [THE COURT]: You stated just now you hadn't cried in two years. You made [Audrey] cry for years. You abused, assaulted and tortured her for almost a third of her life. Those offenses started when you were a juvenile as well. They stopped and then they started again. At any point, you knew what you were doing was wrong. You shattered and trampled her trust as her older adoptive brother.

This singular reference to Wiesenborn's juvenile status reflects only that the trial court knew Wiesenborn was a juvenile at the time 20 of the 33 of offenses were committed. This statement does not establish that the court "weighed it (youth) in any way, shape, form, or manner. *See Miller* at 477. The constitutional significance of the trilogy of *Roper, Graham, Miller (*along with *Moore)*, for purposes of assessing proportionate punishment under the Eight Amendment, was completely ignored by the trial court. The majority notes Wiesenborn's prison sentence was less for the juvenile offenses, but the aggregate difference was miniscule, 39 years versus 39½ years. "Children who commit even heinous crimes are capable of change" and in all but the most extreme circumstances, are required to "have hope for some years of life outside prison walls." *Montgomery v.*

*Louisiana,* __ U.S. __, 136 S.Ct. 718, 725, 736-37, 193 L.Ed.2d 599 (2016).

**{¶ 66}** The suggestion by the majority that Wiesenborn is eligible for release at age 52 is meaningless and illogical in the Eighth Amendment calculus.[5] It ignores the aggregate life sentence imposed upon a youthful, 19-year-old offender who committed the majority of the crimes as a juvenile. Wiesenborn cannot be released until he is 81, beyond his life expectancy. The sentence offers him no hope for rehabilitation and no hope for life beyond prison walls. The only way Wiesenborn leaves prison is in a coffin. "Mercy without justice is the mother of dissolution; justice without mercy is cruelty." *See* Lee, *Justice Benjamin Nathan Cardozo and his Two Most Important Questions: Reflections on the Choice of Tycho Brahe,* 34 Touro L.Rev. 237, 242 (2018) (quoting Thomas Aquinas).

**{¶ 67}** Wiesenborn's record consists entirely of the offenses at issue in this case. Rehabilitation efforts in juvenile court had not previously failed (an obvious aggravating factor); they never occurred. Wiesenborn's father merely mentioned possible jail time to his son when he knew that his son (a juvenile) was raping his sister in the family home. Children are "less likely to take a possible punishment into consideration when making decisions[,]" especially "when that punishment is rarely imposed." *Graham,* 560 U.S. at 72, 130 S.Ct. 2011, 176 L.Ed.2d 825. There was unquestionably a lack of parental supervision as well as a total neglect of parental responsibilities in Wiesenborn's home.

---

[5] The majority fails to recognize that the adult sentence of 39½ years will be served first pursuant to the Judgment Entry of Conviction. By suggesting we look at age 52 as a release date on just the juvenile offenses, the majority leaves the impression it is creating a procedure to justify a particular outcome in the context of sentencing review. That is, it seeks to characterize a de facto life sentence of 78 years as something less than Wiesenborn's natural life.

The victim was not spared and protected by her parents. Nor did Wiesenborn receive the appropriate counseling or juvenile court intervention and sanctions (including potential DYS committment) he so clearly needed. No appropriate steps were taken to insure consequences for Wiesenborn and no effort was made to protect his victim. The trial judge characterized Wiesenborn's parents' inaction as "sickening." However, the Eighth Amendment requires consideration of the reality that Wiesenborn was trapped in a dysfunctional family over which he had no control. *See, generally, Miller,* 567 U.S. at 477-478, 132 S.Ct. 2455, 183 L.Ed.2d 825.

{¶ 68} Furthermore, the trial court made no reference to a competency and sanity report which contained critical information regarding the family dynamics and Wiesenborn's mental health history. Notably, Wiesenborn was on an antidepressant and seeing a professional at Good Samaritan Behavior Health. He was suicidal, having been taken by ambulance to the hospital by Dayton Police. The report further reflected he was three months shy of high school graduation and excelled in playing the viola. I recognize the weight to be given to these facts rested with the trial court, but like youth, they appear not to have been considered at all.

{¶ 69} The majority's analysis of this case results in an affirmance of a sentence for a non-homicide youthful offender far outside the norm of local judicial practice. We should not continue to uphold such outlier sentences, particularly where juvenile conduct is involved and youth is not considered or addressed. This sentence must be leavened with crucial Eighth Amendment considerations applied to Wiesenborn's juvenile offenses. The highest court of the land has emphasized "defendants who do not kill, intend to kill or foresee that life will be taken are categorically less deserving of the most serious forms

of punishment than are murderers. * * * Although an offense like * * * rape 'is a serious crime deserving serious punishment,' those crimes differ from homicide crimes in a moral sense." (Citations omitted.) *Graham* at 69.

{¶ 70} Taking the distinctive attributes of youth into account is consistent with Ohio's long-stated sentencing objectives and the United States Supreme Court's judgment that "youth matters." *Miller* at 483. I acknowledge this court's recent decision in *State v. Serna,* 2d Dist. Champaign No. 2018-CA-16, 2019-Ohio-4102, wherein this court held "the [trial] court did not have an obligation to consider Serna's age [17] as a mitigating factor."[6]   I believe this to be a wholly incorrect statement of law. Youth does matter. "The offender's youth at the time of the offense must still be weighed against any statutory consideration that might make an offense more serious or an offender more likely to recidivate." *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 19.

{¶ 71} "* * * [O]ur system of justice recognizes that appellate courts *do* have a responsibility – expressed in the proportionality principle – not to shut their eyes to grossly disproportionate sentences that are materially unjust." (Emphasis sic.) *Hutto v. Davis,* 454 U.S. 370, 377, 102 S.Ct. 703, 70 L.Ed.2d 556, (1982) (Powell, J., concurring.); *Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, guarantees the autonomy of trial judges, such that we do not strike down simply harsh sentences, but we do have a constitutional obligation to ensure sentences remain within constitutional boundaries. Wiesenborn's sentence does not.

{¶ 72} I would reverse and remand for resentencing.

---

[6] Notably, in *Serna,* the Judgment Entry of Conviction notes "that because the human brain is not completely developed until approximately the age of 25, Serna 'was not * * * neurologically developed' at the time of the offense."

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Robert Alan Brenner
Hon. E. Gerald Parker, Jr.