[Cite as *State v. Watkins*, 2018-Ohio-5137.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-133 |
| | | and |
| v. | : | No. 13AP-134 |
| | | (C.P.C. No. 11CR-4927) |
| Jason L. Watkins, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 20, 2018

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Yeura Venters*, Public Defender, and *Robert D. Essex*, for appellant. **Argued:** *Robert D. Essex.*

APPEALS from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} This case is before the court on remand from the Supreme Court of Ohio pursuant to *State v. Watkins*, 150 Ohio St.3d 366, 2016-Ohio-8464. The Supreme Court reversed our judgment in *State v. Watkins*, 10th Dist. No. 13AP-133, 2013-Ohio-5544, and remanded the case for application of *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288.

{¶ 2} Defendant-appellant, Jason L. Watkins, appeals from judgment entries of the Franklin County Court of Common Pleas denying his motion to withdraw guilty plea and imposing a 67-year aggregate prison sentence for multiple convictions. Because (1) the trial court did not abuse its discretion in denying Watkins' presentence motion to withdraw his guilty plea, and (2) the sentence imposed by the trial court does not violate the Eighth

Amendment prohibitions against cruel and unusual punishment as articulated in *Moore*, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 3}   On October 12, 2011, after Watkins was bound over from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, a Franklin County Grand Jury indicted him for six counts of aggravated robbery in violation of R.C. 2911.01, six counts of robbery in violation of R.C. 2911.02, six counts of kidnapping in violation of R.C. 2905.01, two counts of rape in violation of R.C. 2907.02, and two counts of gross sexual imposition in violation of R.C. 2907.05.  These counts all contained a firearm specification pursuant to R.C. 2941.145.  The counts arose out of four separate events that occurred in February 2011.  The state alleged that Watkins and another unidentified person robbed multiple individuals at gunpoint on four occasions and that Watkins, in two instances, also sexually assaulted certain victims.  Watkins was 16 years old at the time of the offenses.

{¶ 4}   Watkins initially entered a not guilty plea to the offenses.  However, on the morning of his scheduled trial, Watkins entered a guilty plea to five counts of aggravated robbery, and one count each of robbery, sexual battery, and gross sexual imposition, as well as three firearm specifications.  The trial court told Watkins that as a result, he faced a maximum prison term of 73 and one-half years.  Watkins replied that he understood.  The trial court accepted Watkins' guilty plea, ordered the preparation of a presentence investigation, and scheduled a sentencing hearing.  Watkins was 18 years old when he entered his guilty plea.

{¶ 5}   Two days before his scheduled sentencing hearing, Watkins filed a motion to withdraw his guilty plea.  In the motion, he alleged that he entered his guilty plea as the result of pressure put on him by his family and that he did not accurately comprehend the consequences of his plea.  Notwithstanding the motion, the trial court proceeded to sentence Watkins to a total prison term of 67 years.  The trial court subsequently held a hearing on Watkins' motion.  Watkins testified that although he was guilty of some of the counts, he was not guilty of them all.  Therefore, he did not want to plead guilty.  Watkins testified that he felt pressured into entering his guilty plea by family members who thought it was the right thing to do.  At the end of the hearing, the trial denied Watkins' motion.

{¶ 6} Watkins appealed the trial court's judgment asserting two assignments of error:

> [1.] The trial court committed reversible error by denying Defendant-Appellant's presentence motion to withdraw his guilty plea.
>
> [2.] The trial court imposed a cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by sentencing Appellant, who was sixteen years old at the time of the offense, to a prison term of sixty seven (67) years.

{¶ 7} This court overruled both assignments of error and affirmed the trial court's judgment. *Watkins*, 10th Dist. No. 13AP-133, 2013-Ohio-5544. After this court overruled his motion for reconsideration, Watkins filed a notice of appeal and a memorandum in support of jurisdiction with the Supreme Court of Ohio that set forth the following proposition of law:

> A court must separately consider the youth of a juvenile offender as a mitigating factor before imposing a sentence that is the functional equivalent of life without parole. Further, the record must reflect that the court specifically considered the juvenile offender's youth as a mitigating factor at sentencing when a prison term that is the functional equivalent of life without parole is imposed. (*Miller v. Alabama*, ___U.S.___, 132 S.Ct. 2455, 183 L.Ed. 407 (2012), and *State v. Long*, --- Ohio St.3d ___, 2014-Ohio-849, ___N.E.3d ___, followed.)

The Supreme Court accepted the appeal. However, it held its review pending its decision in *Moore*, which involved an Eighth Amendment challenge to the imposition of an aggregate term-of-years prison sentence for a juvenile nonhomicide offender. The Supreme Court decided *Moore* on December 22, 2016.

{¶ 8} By judgment entry dated December 30, 2016, the Supreme Court reversed our judgment and remanded this case for application of *Moore*. On October 19, 2017, this court filed a journal entry vacating its previous judgment and reactivating the appeal. Thereafter, this court asked for and received supplemental briefing from the parties on the application of *Moore* to Watkins' sentence. Watkins provided the following supplement to his second assignment of error.

> In light of *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, the trial court imposed a cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by sentencing appellant, who was sixteen years old at the time of the offenses, to a prison term of sixty seven (67) years.

Based on the mandate from the Supreme Court and Watkins' second assignment of error, we address whether Watkins' sentence violates the Eighth Amendment in light of *Moore*.

{¶ 9} We note that the proposition of law set forth in Watkins' memorandum in support of jurisdiction to the Supreme Court challenged the *procedure* a trial court must follow before imposing on a juvenile an aggregate term-of-years sentence for nonhomicide offenses that exceed the juvenile's life expectancy (i.e., whether a trial court must separately consider the youth of a juvenile offender as a mitigating factor, and reflect that consideration on the record, before imposing such a sentence). Watkins cites *Miller*, 567 U.S. 460 (2012), and *Long*, 138 Ohio St.3d 478, 2014-Ohio-849 as support for this proposition of law. This argument was not raised, and therefore not addressed in the first appeal to this court. *Watkins*, 10th Dist. No. 13AP-133, 2013-Ohio-5544. Furthermore, Watkins does not raise this procedural issue in an assignment of error in this appeal. Lastly, the Supreme Court's mandate to this court limits our review to re-examining Watkins' sentence in light of *Moore*. *Moore* did not address the procedural issue raised in Watkins' proposition of law to the Supreme Court. For these reasons, we do not address this procedural issue, which Watkins now raises in his supplemental brief to this court. (Supp. Brief of Defendant-Appellant at 12-13.)

## II. LEGAL ANALYSIS

### A. Eighth Amendment – Prohibition Against Cruel and Unusual Punishment

{¶ 10} The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, states that "[e]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment proscribes " 'all excessive punishments as well as cruel and unusual punishments that may or may not be excessive.' " *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008), quoting *Atkins v. Virginia*, 536 U.S. 304, 311 (2002). For example, the cruel and unusual punishments clause prohibits the imposition of inherently barbaric punishments

under all circumstances. *Graham v. Florida*, 560 U.S. 48, 59 (2010). However, most Eighth Amendment cases consider punishments not challenged as inherently barbaric but as disproportionate to the crime. *Id.* "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportionate to [the] offense.' " *Id.*, quoting *Weems v. United States*, 217 U.S. 349, 367. " 'Protection against disproportionate punishment is the central substantive guaranty of the Eighth Amendment.' " *Moore* at ¶ 31, quoting *Montgomery v. Louisiana*, ____U.S.____, 136 S.Ct. 718 (2016).

{¶ 11} Cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences in light of the circumstances of the particular case. The second involves challenges to the sentence based upon categorical restrictions. *Graham* at 59; *Moore* at ¶ 32. Both the United States Supreme Court and the Supreme Court of Ohio have recognized two subsets of categorical restrictions. As stated by the Supreme Court of Ohio:

> One subset considers the nature of the offense—for example, in *Kennedy v. Louisiana*, 554 U.S. 407, 437, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), the United States Supreme Court held that capital punishment is impermissible for defendants who commit a nonhomicide rape of a child. The second subset considers the characteristics of the offender; in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), for instance, the court ruled that the Eighth Amendment prohibits the execution of a mentally retarded defendant.

*Moore* at ¶ 32; *accord Graham* at 60-61.

{¶ 12} In recent years, the United States Supreme Court has addressed various challenges to sentences involving juveniles. For example, in *Roper v. Simmons*, 543 U.S. 551 (2005), the court prohibited imposition of the death penalty on defendants who committed their crimes before the age of 18. In *Graham*, the court prohibited the imposition of life-without-parole sentences on juvenile offenders who did not commit homicide. And, in *Miller v. Alabama*, 567 U.S. 460 (2012), the court prohibited the mandatory imposition of life-without-parole sentences on offenders who committed murder as juveniles.

{¶ 13} The United States Supreme Court in *Graham* prohibited the imposition of life-without-parole sentences on juvenile offenders who did not commit homicide. However, the court did not address the constitutionality of an aggregate term-of-years prison sentence for nonhomicide offenses that extends beyond a juvenile offender's life expectancy, without the possibility of release, i.e., a functional life sentence. In *Moore*, the Supreme Court of Ohio considered this unaddressed issue and concluded that such sentences fell under the *Graham* categorical bar.

## B. *State v. Moore*

{¶ 14} In *Moore*, the defendant, a juvenile at the time he committed numerous nonhomicide but serious felonies, received an aggregate 112-year prison sentence. At his resentencing, the trial court stated "it is the intention of this court that you should never be released from the penitentiary." *Moore* at ¶ 17. It was undisputed that the defendant would become eligible to file a motion for judicial release after serving 77 years of his sentence. The defendant would be 92 years old before he would have his first opportunity to move for judicial release. It was also undisputed that the defendant's life expectancy was "well short of 92 years." *Id.* at ¶ 30.

{¶ 15} *Moore* relied principally on the rationale set forth in *Graham* in concluding that sentencing a juvenile to an aggregate term-of-years sentence for nonhomicide offenses that precludes any possibility of release during the juvenile's life expectancy violates the Eighth Amendment. *Moore* found that sentencing a juvenile to an aggregate term-of-years sentence that realistically precludes any possibility of release during the juvenile's life expectancy was the functional equivalent of a life sentence, which *Graham* found violated the Eighth Amendment. *Moore* at ¶ 59, 63-64.

{¶ 16} In *Graham*, the United States Supreme Court held that sentences of life imprisonment without the possibility of parole for juvenile nonhomicide offenders were cruel and unusual in violation of the Eighth Amendment in light of three factors: (1) the limited moral culpability of juvenile nonhomicide offenders, (2) the inadequacy of penological theory justifying the length of life-without-parole sentences for such offenders; and (3) the severity of life-without-parole sentences. *Graham* at 68-74.

{¶ 17} With respect to the first factor, moral culpability, *Graham* noted that a juvenile who did not kill or intend to kill has "twice diminished moral culpability" based on

two factors: the nature of the crime and the juvenile's age. *Graham* at 69. Nonhomicide defendants "are categorically less deserving of the most serious forms of punishment than are murderers." *Id*. In addition, juveniles are less morally culpable then adults due to their youth and what comes with it. *Moore* at ¶ 36, citing *Miller v. Alabama*, 567 U.S. 460 (2012) (children have a lack of maturity and an underdeveloped sense of responsibility leading to recklessness, impulsivity, and heedless risk taking–and they are more vulnerable to negative influences and outside pressures).

{¶ 18} A juvenile's inherently diminished moral culpability gives rise to the second factor: the inadequacy of penological theory justifying the length of life-without-parole sentences. The recognized legitimate goals of penal sanctions—retribution, deterrence, incapacitation, and rehabilitation—do not justify the imposition of the harshest penalties on juveniles who have committed nonhomicide crimes. *Moore* at ¶ 39. Because a juvenile is inherently less blameworthy, "the case for retribution is not as strong with a minor as with an adult." *Graham* at 71, quoting *Tison v. Arizona*, 481 U.S. 137 (1987). Likewise, the same characteristics that render juveniles less culpable then adults—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment, thereby reducing the impact of deterrence. *Graham* at 72; *Moore* at ¶ 39.

{¶ 19} Nor does incapacitation support a life-without-parole sentence because such a severe sentence—the third factor noted in *Graham*—would require making a judgment that the juvenile is incorrigible, when incorrigibility is inconsistent with youth. *Graham* at 73; *Moore* at ¶ 39. A life-without-parole sentence is "an irrevocable judgment about [an offender's] value and place in society," which is at odds with a juvenile's capacity for change. *Graham* at 74.

{¶ 20} Perhaps the most fundamental principle in *Graham* and *Moore* is that juvenile offenders have the potential for change. However, *Graham* recognized the difficulty in determining whether the commission of a crime is the result of immaturity or of irredeemable corruption. *Id.* at ¶ 68. That is why *Graham* recognized that, although an offender convicted as a juvenile could ultimately spend a lifetime in prison, the offender has to be given a chance at some point to prove himself worthy of reentering society. A sentence must not " 'den[y] the juvenile offender a chance to demonstrate growth and maturity.' " *Moore* at ¶ 43, quoting *Graham* at 73. *Moore* explained:

> *Graham* does not foreclose the possibility that a defendant who commits a heinous crime as a youth will indeed spend his entire remaining lifetime in prison; *Graham* does not guarantee an eventual release. "What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75. *Graham* leaves it to the states to determine how to achieve that requirement: "It is for the State, in the first instance, to explore the means and mechanisms for compliance." Id.

*Id.* at ¶ 44.

{¶ 21} *Moore* emphasized that "the state retains the ability, upon a meaningful evaluation of an offender who committed a nonhomicide offense as a juvenile, to impose lifetime incarceration upon the most serious offenders." *Moore* at ¶ 45. But, the Eighth Amendment "prohibit[s] [s]tates from making the judgment at the outset that those offenders never will be fit to reenter society." *Id.* at ¶ 45, quoting *Graham* at 75. Therefore, "[p]ursuant to *Graham*, the Eighth Amendment prohibits the imposition of a sentence that denies a juvenile some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Moore* at ¶ 47. Because an aggregate term-of-years prison sentence that extends beyond the juvenile offender's life expectancy, without the possibility of release, is the functional equivalent of a life-without-parole sentence, *Moore* held such a sentence violates the Eighth Amendment. *Id.* at 59, 63-64.

{¶ 22} *Moore* made clear that juvenile sentences run afoul of the Eighth Amendment when: (1) the aggregate sentence exceeds the juvenile's life expectancy; and (2) the juvenile has no meaningful opportunity to obtain release and reenter society based upon demonstrated maturity and rehabilitation prior to the completion of the sentence. *Moore* described what it meant by an "opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at ¶ 47. Broadly speaking, the opportunity must be "meaningful." *Id.* Again, citing to *Graham*, *Moore* stated:

> *Graham* is less concerned about how many years an offender serves in the long term then it is about the offender having an opportunity to seek release while it is still meaningful.

*Moore* at ¶ 63.

{¶ 23} *Moore* noted that the opportunity for release while it is still meaningful means that the "likelihood of simply surviving a sentence does not provide the protection to juvenile offenders envisioned by *Graham*." *Id.* at ¶ 81, citing *State v. Null*, 836 N.W.2d 41 (Iowa 2013).  " 'The prospect of geriatric release * * * does not provide a "meaningful opportunity" to demonstrate the "maturity and rehabilitation" required to obtain release and reenter society as required by *Graham*.' "  *Id.* at ¶ 81, quoting *Null* at 71.  Nor should courts "undertake fine line-drawing to determine how close to the mark a sentencing court can come to a defendant's life expectancy." *Moore* at ¶ 82.  Rather, in juvenile sentencing, the spirit of the law as reflected in *Graham* recognizes that juveniles have lessened moral culpability and are potentially redeemable.  Therefore, they must be given a chance to demonstrate the change they have undergone since committing their crimes so that they can potentially reenter society with enough time left for a meaningful life outside of prison. *Moore* at ¶ 84.

### C.  Watkins' Sentence and His Eligibility for Judicial Release

{¶ 24} In the case at bar, Watkins was 18 years old at the time of his sentencing. Upon completion of his full 67-year sentence, Watkins would be 85 years old.  Because Watkins' aggregate sentence exceeds his life expectancy, the constitutionality of his sentence under the Eighth Amendment turns on whether he has a meaningful opportunity to demonstrate maturity and rehabilitation prior to the completion of his sentences.

{¶ 25} Only nine years of Watkins' aggregate 67-year sentence (the three (three-year) firearm specifications) are mandatory.  Thus, 58 years of the aggregate sentence are non-mandatory.  Because the aggregate non-mandatory prison term is more than 10 years, Watkins will be eligible for judicial release the later of the following:  (1) completion of one-half of the stated prison term, i.e., 33 and one-half years, or (2) completion of the 9-year mandatory sentence plus 5 years, i.e., 14 years.  R.C. 2929.20(C)(5).  Because 33 and one-half years is longer than 14 years, Watkins will be eligible for judicial release after serving 33 and one-half years of his sentence.  Watkins was born November 23, 1994, and he was sentenced on January 11, 2013.  Factoring in jail-time credit of 485 days, Watkins will be 50 years old when he is eligible for judicial release.  Therefore, the precise question before us on remand is whether Watkins' opportunity for judicial release at age 50 complies with the Eighth Amendment as interpreted by *Graham* and *Moore*.  Stated another way, does

the potential for judicial release at age 50 give Watkins a reasonable opportunity to demonstrate maturity and rehabilitation so that he can reenter society with enough time left for a meaningful life outside of prison?  We conclude that it does.

{¶ 26} *Moore* implicitly recognized that judicial release is a sufficient procedural mechanism for giving a juvenile offender the opportunity to demonstrate sufficient maturity and rehabilitation to reenter society.  Although *Moore* found that the juvenile sentence at issue therein unconstitutional because the defendant would not become eligible for judicial release until he was 92 years old, *Moore* assumed the efficacy of the judicial release mechanism as a means for demonstrating maturity and rehabilitation.  In addition, Justice Lanzinger's concurrence in *Moore* explicitly endorsed judicial release as a sufficient mechanism to comply with *Graham*.  *Moore* at ¶ 141-44 (Lanzinger concurring).  Likewise, the Sixth Circuit found that Ohio's judicial release procedures complied with *Graham*.  *Goins v. Smith*, 556 Fed.Appx. 434, 439-40 (6th Cir.2014).  Watkins does not argue otherwise.  We further note that the criteria for granting judicial release includes factors that assess a defendant's maturity, rehabilitation, and ability to safely reenter society.  *See* R.C. 2929.20(J).

{¶ 27} The problem in *Moore* was not with the judicial release mechanism, but with the timing of the juvenile defendant's eligibility for judicial release.  Because the juvenile defendant would be 92 years old before he was eligible for judicial release, *Moore* found the sentence violative of the Eighth Amendment.  Based upon the principles articulated in *Graham*, *Moore* found the sentence unconstitutional essentially because the opportunity to demonstrate maturity and rehabilitation at age 92, long after the expiration of the defendant's normal life expectancy, was not a realistic opportunity to reenter society when it would be meaningful.  *Moore* at ¶ 63-64.  Watkins argues that his sentence, which does not afford him the opportunity to demonstrate maturity and rehabilitation until age 50, is also violative of the Eighth Amendment.  We disagree.

{¶ 28} Watkins will be eligible for judicial release long before the end of his life expectancy.  Unlike the defendant in *Moore* who was afforded only the "prospect of geriatric release," Watkins has the opportunity to demonstrate maturity and rehabilitation at an age when most people are still in good health and in their prime working years.  We are well aware of the significant challenges that confront any defendant who reenters society after

many years of incarceration. Nevertheless, the possibility for judicial release at age 50 grants Watkins the opportunity to reenter society with enough time left for a meaningful and productive life outside prison. To conclude otherwise would suggest there is not enough time left after a person reaches age 50 for life to be meaningful and productive. This is a proposition we cannot accept.

{¶ 29} Neither Watkins nor the state have cited any Ohio authority that has directly addressed the age at which the state must provide a juvenile defendant facing a functional life sentence for nonhomicide offenses the opportunity to demonstrate maturity and rehabilitation. However, the Second District Court of Appeals has indicated that eligibility for parole at age 58 or 59 for a juvenile convicted of murder is not violative of the Eighth Amendment. *See State v. Taylor*, 2d Dist. No. 27879, 2018-Ohio-4628, ¶ 11 (concluding that the juvenile defendant's aggregate 41-to-life sentence for murder with the possibility of parole at age 58 does not violate that Eighth Amendment); *State v. Burns*, 2d Dist. No. 27374, 2018-Ohio-1419, ¶ 21-23 (juvenile defendant's aggregate 44-to-life sentence for aggravated murder did not violate the Eighth Amendment when the defendant would be eligible for parole at age 59).

{¶ 30} Courts in other states have upheld term-of-years sentences that exceed the juvenile defendant's life expectancy for nonhomicide offenses when the defendant has the opportunity to demonstrate maturity and rehabilitation before their geriatric years. For example, in *Ira v. Janecka*, 419 P.3d 161 (N.M.2018), the Supreme Court of New Mexico found that a 91 and one-half aggregate term-of-years sentence for nonhomicide offenses did not violate the Eighth Amendment because the juvenile defendant had the opportunity to demonstrate maturity and rehabilitation, and potentially be released at age 62. *Id.* at 169-71 (noting that the opportunity to obtain release at age 62 "is the outer limit of what is constitutionally acceptable"). Likewise, in *People v. Lucero*, 410 P.3d 467 (Colo.2013), the court held that juvenile defendant's aggregate 84-year sentence for nonhomicide offenses did not violate the Eighth Amendment because the defendant has "a meaningful opportunity for release" at age 57. *Id.* at 470.

{¶ 31} In contrast, when juvenile offenders face long sentences for nonhomicide offenses without the opportunity for release until they are in their mid-sixties or beyond, courts have found such sentences in conflict with the principles set forth in *Graham*. *E.g.*,

*People v. Contreras*, 411 P.3d 445 (Cal.2018) (eligibility for parole at age 66 or 74 not compliant with Eighth Amendment for juvenile nonhomicide offenders); *People v. Caballero*, 282 P.3d 291 (Cal.2012) (sentence allowing parole eligibility only after serving 110 years for juvenile defendant violated the Eighth Amendment); *Henry v. State*, 175 So.3d 675 (Fla.2015) (term-of-years sentence for a nonhomicide juvenile offender with mandatory prison time until age 95 unconstitutional under *Graham*).

{¶ 32} Some state legislatures have recently responded to the *Graham* decision by passing legislation that requires a juvenile offender be granted parole eligibility after serving a certain number of years of a long sentence. The length of the sentence that juveniles must serve before becoming parole eligible ranges between 15 and 40 years—depending on the state. *See Contreras* at 370 (listing various state legislation). Therefore, depending on the state, a juvenile offender would be anywhere between their early 30s to near 60 before they would have an opportunity to demonstrate maturity and rehabilitation. Precisely when a juvenile offender facing a long term-of-years prison sentence should be granted the opportunity for release is a legitimate policy issue subject to fair debate. However, our role is not to resolve a policy debate. The issue before us is the constitutionality of Watkins' sentence. The number of years a juvenile offender ultimately serves is not the primary concern in the Eighth Amendment analysis. What is paramount is that the juvenile offender must have an opportunity to seek release while it is still meaningful. *Moore* at ¶ 47. Because Watkins will have the opportunity for judicial release at age 50, his sentence does not violate the Eighth Amendment as interpreted by *Graham* and *Moore*. Therefore, we overrule Watkins' second assignment of error.

{¶ 33} In his first assignment of error, Watkins argues the trial court erred when it denied his presentence motion to withdraw his guilty plea. *Moore* did not address a presentence motion to withdraw a guilty plea. Therefore, *Moore* has no application to Watkins' first assignment of error. For the reasons previously set forth in our first decision, we again overrule this assignment of error. *See Watkins*, 10th Dist. No. 13AP-133, 2013-Ohio-5544, at ¶ 9-13.

## III.  Conclusion

{¶ 34} Having overruled Watkins' two assignments of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.