[Cite as *State v. Strowder*, 2019-Ohio-4573.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff-Appellee,            :

                                                   No. 107855

     v.                             :

DASHAWN STROWDER,                       :

     Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** November 7, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-604551-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar and Carl Mazzone, Assistant Prosecuting Attorneys, *for appellee.*

Brooke M. Burns, *for appellant.*

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Appellant Dashawn Strowder ("Strowder") appeals from the sentence imposed on remand for his convictions for rape, kidnapping, robbery, and felonious assault. He assigns the following errors for our review:

The Cuyahoga County Court of Common Pleas erred when it sentenced

[Strowder], a juvenile, nonhomicide offender, to a sentence that does not provide him with a "meaningful opportunity for release." Eighth Amendment to the U.S. Constitution; Ohio Constitution, Article I, Section 9; *Graham v. Florida*, 560 U.S. 48, 75, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127.

{¶ 2} Having reviewed the record and pertinent law, we affirm the sentence, but we remand for the issuance of a nunc pro tunc sentencing journal entry in order to reflect what transpired at the September 26, 2018 sentencing hearing.

{¶ 3} This case originated in juvenile court when Strowder was 17 years old. Following a mandatory bindover, Strowder and codefendant Isaiah Campbell ("Campbell") were indicted in a nine-count indictment in connection with an attack upon a woman as she attempted to drive home following a family celebration. *See State v. Strowder*, 8th Dist. Cuyahoga No. 105569, 2018-Ohio-1292 ("*Strowder I*"). Strowder was charged with three counts of rape with sexually violent predator specifications, two counts of kidnapping, with one count alleging both a sexual motivation specification and a sexually violent motivation specification, aggravated robbery, felonious assault with a sexual motivation specification, grand theft (motor vehicle), and receiving stolen property, in violation of R.C. 2913.51(A). All counts also contained one-year and three-year firearm specifications. Strowder was acquitted of one of the rape charges, but was convicted of all remaining charges. After obtaining additional testimony and evidence, the trial court found Strowder guilty of the sexually violent predator specifications, thus adding a "life tail" to the sexual offenses. The court merged the aggravated robbery, grand theft, and

receiving stolen property convictions, and also merged the felonious assault conviction into the rape, kidnapping, and aggravated robbery convictions. The court imposed consecutive terms, sentencing Strowder to 50 years to life, and also ordered that this term be served consecutively to Strowder's nine-year sentence in another matter from Stark County that resulted from a gang-related offense while he was in the custody of the Ohio Department of Youth Services.

{¶ 4} On direct appeal, this court affirmed the convictions but reversed and remanded the sentence pursuant to *Graham*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, and *Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, in order to provide for Strowder, a juvenile offender, with a meaningful opportunity for parole. *Strowder I* at ¶ 45.

{¶ 5} On remand, the defense asked for a sentence that would enable Strowder to be eligible for parole after 15 to 30 years, citing his difficult childhood, and his participation in education, mental health, and other activities while in prison. The court heard from Strowder who told the court that he is endeavoring to improve. The court cited outlined Strowder's extensive criminal history and ultimately concluded that consecutive sentences should be imposed. The court sentenced Strowder to a total of 12 years for the firearm specifications and a total of 22 years on the other offenses, noting that the rape and kidnapping convictions carried a life tail, for a total sentence of 34 years-to-life. The court also ordered that the sentence be served consecutively to the Stark County conviction, and Strowder filed the instant appeal.

**{¶ 6}** This court instructed the parties to advise us of the date when Strowder will be eligible for parole. The parties stated that he would be eligible for parole in this matter in October 2050, at age 54. The trial court subsequently indicated that he would be eligible (in relation to both this matter and the Stark County matter) in September 2057, when he is 61 years old.

### Law and Analysis

**{¶ 7}** Strowder argues that his sentence of 34 years-to-life imprisonment constitutes cruel and unusual punishment because it does not provide him with a meaningful opportunity for release.

**{¶ 8}** The Eighth Amendment to the United States Constitution's prohibition against cruel and unusual punishment includes the "precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 31, quoting *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910). This aspect of the Eighth Amendment encompasses certain categorical restrictions, including the categorical prohibitions of certain punishments for juveniles. *Id.* at ¶ 33. Two such prohibitions are that courts may not impose mandatory life-without-parole sentences on offenders who commit murder as juveniles, and courts may not impose life-without-parole sentences on nonhomicide juvenile offenders. *Id.,* citing *Miller v. Alabama,* 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and *Graham,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825.

{¶ 9} In *Graham*, the court held that sentences of life imprisonment without parole for juvenile nonhomicide offenders are cruel and unusual in light of the limited moral culpability of these offenders, the inadequacy of penological theory justifying such sentences, and the severity of such sentences in relation of juvenile offenders. *Graham* at 74. However, the *Graham* court cautioned that it was not "guarantee[ing] eventual freedom to a juvenile offender convicted of a nonhomicide crime." Rather,

> [*w*]*hat the State must do* * * * *is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.* It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

(Emphasis added.) *Id.* at 75.

{¶ 10} In *Moore*, the Ohio Supreme Court held that these considerations are applicable to both juvenile offenders sentenced to life imprisonment without parole for a nonhomicide offense and juvenile nonhomicide offenders sentenced to prison for terms of years extending beyond life expectancy. *Id.* at ¶ 1, 48. The court concluded that imposition of sentences for terms of years that extend beyond the offender's life expectancy are "functional life sentences." *Id.* at ¶ 59.

{¶ 11} In calculating Moore's parole eligibility, the court noted that Moore was sentenced to a total of 112 years, and his six ten-year sentences for rape and his four three-year firearm specifications were mandatory terms under R.C. 2929.13(F) and 2941.145. Moore would be eligible for parole after 77 years, or when he is 92 years old. This rendered Moore's sentence a "functional life sentence." *Id.*, 149 Ohio St.3d 557 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 30, 48 (applying U.S. Department of Health and Human Services, National Vital Statistics Reports, Volume 52, Number 3, at 26 (2003), http://www.cdc.gov/nchs/data/nvsr/nvsr52/nvsr52_03.pdf (accessed Oct. 5, 2016). The *Moore* court also held that the "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" established in *Graham,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825, is not reserved solely for juvenile offenders who commit a single nonhomicide offense. *Moore* at ¶ 65.

{¶ 12} Significantly, the *Moore* court recognized that "*Graham* is less concerned about how many years an offender serves in the long term than it is about the offender having an opportunity to seek release while it is still meaningful." *Id.* at ¶ 63. The *Moore* court reviewed various cases applying *Graham* and observed that "[*State v. Null*, 836 N.W.2d 41 (Iowa 2013)] made clear that courts should not undertake fine line-drawing to determine how close to the mark a sentencing court can come to a defendant's life expectancy." However, the *Moore* court noted with approval various cases finding *Graham*'s protections applicable (or "functional life

sentences" as used in *Moore*) to sentences with terms ranging from 50 years to 110 years to life.

{¶ 13} Later, in *State v. Watkins*, 10th Dist. Franklin Nos. 13AP-133 and 13AP-134, 2018-Ohio-5137, the court reviewed various cases and concluded that parole eligibility at 62 years old to be the "outer limit" of what is constitutionally acceptable. *Id.* at ¶ 28-31. *See also State v. Burns*, 2d Dist. Montgomery No. 27374, 2018-Ohio-1419, ¶ 21-23 (juvenile defendant's aggregate 44-years-to-life sentence for aggravated murder was permissible where the defendant would be eligible for parole at age 59); *State v. Taylor*, 2d Dist. Montgomery No. 27879, 2018-Ohio-4628, ¶ 11 (juvenile defendant's aggregate 41-years-to-life sentence for murder was permissible where the defendant would be eligible for parole at age 58). *See also Ira v. Janecka*, 419 P.3d 161 (N.M.2018) (sentence permissible where the defendant would be eligible for parole at 62 years old); *Demirdjian v. Gipson*, 832 F.3d 1060 (9th Cir.2016) (sentence permissible where the defendant would be eligible for parole at 66 years old); *Bryant v. Foulk*, E.D.Cal. No. 2:13-cv-1750-MCE-GGH, 2014 U.S. Dist. LEXIS 152770 (Oct. 28, 2014) (sentence permissible where the defendant would be eligible for parole at 61 years old).

{¶ 14} In this matter, Strowder was originally sentenced to 50 years to life to be served consecutively to the Stark County term. On this court's remand in *Strowder I*, the trial court made an extremely significant downward departure in the sentence. On remand, Strowder's 50 years to life sentence was reduced to 34 years to life (because of the life tail for the sexually violent predator specification),

and consecutive to the Stark County conviction. As set out in the record, Strowder would have been eligible for parole at 54 years old strictly in relation to this offense. However, the sentence was ordered to be served consecutively to the Stark County conviction, so he will be eligible at age 61 in relation to both offenses. Under the case law, this is not a functional life sentence. It provides Strowder with a realistic and meaningful opportunity to demonstrate maturity and reform, and it potentially enables him to return to society within his normal life expectancy. Moreover, given the nature of the offenses and that Strowder was determined to have a "high risk" of reoffending, the trial court fashioned a sentence that punishes for the extremely heinous offenses without imposing cruel and unusual punishment.

{¶ 15} That being said, we urge the legislature to examine this important issue in order to provide courts with additional guidance and to directly address the issue of juvenile offender parole eligibility. "Precisely when a juvenile offender facing a long term-of-years prison sentence should be granted the opportunity for release is a legitimate policy issue subject to fair debate." *Watkins*, 2018-Ohio-5137, at ¶ 32. Courts should not arbitrarily pick the point at which multiple aggregated sentences may become the functional equivalent of life without parole. In addition, legislative assistance could help courts to reconcile *Moore*'s acknowledgement that "the state retains the ability, upon a meaningful evaluation of an offender who committed a nonhomicide offense as a juvenile, to impose lifetime incarceration upon the most serious offenders" with the requirement of a meaningful "opportunity to obtain release based on demonstrated maturity and rehabilitation."

**{¶ 16}** Accordingly, the assigned error is without merit.

**{¶ 17}** Finally, the defense and state both note that the trial judge committed a clerical error in the issuance of the judgment entry of conviction regarding the four firearm specifications. The court stated during the sentencing hearing as follows:

> This Court is going to sentence the defendant on Count 2 to 11 years consecutive to 11 years on Count 3. Concurrent to 11 years on Count 4. Concurrent to 11 years on Count 5. Counts 2 will have the three-year firearm spec to be served prior to and consecutive with the three years. Count 3 will also have a three-year firearm spec as the law requires me to do which will also be consecutive to and prior to the 11 years. And the Court will also run the 1 three-year firearm spec on Counts 4 and 5 consecutive to the other three-year firearm spec for a total of 34 years.

**{¶ 18}** Yet the court's sentencing order states:

> Count 2: Three year firearm spec to be served prior to and consecutive with 11 years to life.

> Count3: Three year firearm spec to be served prior to and consecutive with 11 years to life.

> Counts 2 and 3 to run consecutive to one another and concurrent to all other counts.

> Count 4: Three year firearm spec to be served prior to and consecutive with 11 years to life.

> Count 5: Three year firearm spec to be served prior to and consecutive with 11 years to life.

> Counts 4 and 5 to run concurrent to each other and to Counts 2 and 3.

> Pursuant to R.C. 2929.14(B)(1)(g), the firearm specs are to run concurrent to one another for a total of 12 years on the firearm specs. Total sentence 22 years plus 12 years on the firearm specs =34 years.

> Consecutive to case out of Stark County.

{¶ 19} In accordance with the foregoing, the court must issue a nunc pro tunc correction to reflect the information provided at sentencing regarding the four firearm specifications.

{¶ 20} Judgment is affirmed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for the issuance of a nunc pro tunc sentencing journal entry and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

ANITA LASTER MAYS, J., CONCURS;
LARRY A. JONES, SR., J., DISSENTS
WITH SEPARATE OPINION

LARRY A. JONES, SR., J., DISSENTING:

{¶ 21} "The 'imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children.'" *Moore*, 149 Ohio St.3d

557, 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 62, quoting *Miller*, 567 U.S. at 474, 132 S.Ct. 2455, 183 L.Ed.2d 407.  For the reasons that follow, I dissent.

{¶ 22}  There is no dispute that the crimes committed in this case were heinous and deserving of punishment — Strowder deserves to spend a significant amount of time in prison.  But just as we cannot ignore the horrible facts of this case, we also cannot ignore the fact that Strowder was a child when he committed these crimes and the fact that, based on his sentence, he will be 61 years old before he has his first opportunity for release from prison.  Even though Strowder committed unspeakable acts, he is a juvenile nonhomicide offender; therefore, as determined by the United States Supreme Court and Ohio Supreme Court, he deserves a chance to have a meaningful opportunity at life outside of prison.

{¶ 23}  This court remanded *Strowder I* to hold a sentencing hearing that comported with *Moore* and *Graham*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825.  On appeal, we are to consider whether his current sentence provides a "meaningful opportunity" as guaranteed by the Eighth Amendment.  Because Strowder is not eligible to go in front of the parole board until 2057, when he will be 61 years old, I find that it does not.  I believe the sentence the trial court imposed in this case is therefore unconstitutional.

{¶ 24}  In 2005, the United States Supreme Court prohibited the imposition of the death penalty for juvenile offenders.  *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).  Five years later, the court prohibited the imposition of life without parole sentences for juvenile nonhomicide offenders.

*Graham* at 75. More recently, the court prohibited the mandatory imposition of life without parole for juvenile homicide offenders in *Miller,* 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407.

{¶ 25} In each of these cases, the Supreme Court has justified its holdings, in part, because of the recognition that children are different from adults:

> (1) [C]hildren have a "lack of maturity and an underdeveloped sense of responsibility" leading to recklessness, impulsivity, and heedless risktaking."
>
> (2) [C]hildren "are more vulnerable * * * to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and "lack the ability to extricate themselves from horrific, crime-producing settings."
>
> (3) A child's character is not as well formed as an adults; his [or her] traits are "less fixed" and his [or her] actions less likely to be "evidence of irretrievabl[e] deprav[ity]."

*Miller* at 471, citing *Roper* at 569-570.

{¶ 26} A "child's age is far 'more than a chronological fact.'" *J.D.B. v. North Carolina*, 564 U.S. 261, 323, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). "It is a fact that 'generates common sense conclusions about [a child's] behavior and perception.'" *J.D.B.* at *id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 674, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (Breyer, J., dissenting). A child's "transient rashness, proclivity for risk, and inability to assess consequences" not only lessen a child's moral culpability, but also enhance the prospect that as the years go by and

neurological development occurs, a child's deficiencies will be reformed. *Miller* at 472.

{¶ 27} "The most important attribute of the juvenile offender is the potential for change." *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 42. Both the United States Supreme Court and the Ohio Supreme Court have found that imposing sentences that exceed the life expectancy of juvenile nonhomicide offenders is cruel and unusual punishment. This is because "[t]he Eighth Amendment * * * prohibit[s] States from making the judgment at the outset that [juvenile nonhomicide] offenders will never be fit to reenter society." *Moore* at ¶ 45, quoting *Graham,* 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825.

> [A] juvenile who did not kill or intend to kill has "twice diminished moral culpability" based on * * * the nature of the crime and the juvenile's age. As for the nature of the crime, the [U.S. Supreme Court] found that "[a]lthough an offense like robbery or rape 'is a serious crime deserving serious punishment,' those crimes differ from homicide-crimes in a moral sense," such that nonhomicide defendants "are categorically less deserving of the most serious forms of punishment than are murderers."

*Moore* at ¶ 36, quoting *Graham* at 69.

{¶ 28} Thus, as reflected in the above cited cases, juveniles have lessened moral culpability and are potentially redeemable. Because no one can definitively say at the onset whether a juvenile's crimes, even crimes like Strowder committed, are the result of immaturity or are the product of "irreparable corruption," all children who are convicted of nonhomicide offenses in criminal court must be granted a "meaningful opportunity to obtain release, based on demonstrated

maturity and rehabilitation." *Graham* at 68. "It does not take an entire lifetime for a juvenile offender to earn a first chance to demonstrate that he [or she] is not irredeemable." *Moore* at ¶ 47. Yet, based on his current sentence, Strowder will not earn that first chance until he is 61 years old, having been in prison (or its juvenile equivalent) since he was 17 years old.

{¶ 29} While Strowder may certainly live past the age of 61, the United States Supreme Court views the concept of a life sentence "more broadly than biological survival * * * an individual is effectively incarcerated for 'life' if he [or she] will have no opportunity to truly reenter society or have a meaningful life outside of prison." *Moore* at ¶ 84, quoting *Casiano v. Commr. of Corr.*, 317 Conn. 52, 78, 115 A.3d 1031 (2015).

> A juvenile offender is typically put behind bars before he [or she] has had the chance to exercise the rights and responsibilities of adulthood, such as establishing a career, marrying, raising a family, or voting. Even assuming the juvenile offender does live to be released, after a half century of incarceration, he [or she] will have irreparably lost the opportunity to engage meaningfully in many of these activities and will be left with seriously diminished prospects for his [or her] quality of life for the few years he [or she] has left. A juvenile offender's release when he [or she] is in his [or her] late sixties comes at an age when the law presumes that he [or she] no longer has productive employment prospects. Indeed, the offender will be age-qualified for Social Security benefits without ever having had the opportunity to participate in gainful employment.

*Casiano* at 77.

{¶ 30} Thus, "[a]s a practical matter, a juvenile offender sentenced to a lengthy term-of-years sentence will not have a 'meaningful opportunity for release.'" *Cloud v. State*, 2014 WY 113, 334 P.3d 132, ¶ 34 (2014). "The United States

Sentencing Commission recognizes this reality when it equates a sentence of 470 months (39.17 years) to a life sentence." *Id.*, citing U.S. Sentencing Commission Preliminary Quarterly Data Report (through Mar. 31, 2014), at 8.[1]

{¶ 31} In determining whether Strowder's sentence would give him a meaningful opportunity to have a life outside prison, this court should note that *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, and *Graham,* 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825, tell us that a sentence should be composed not with the intent "to eventually allow juvenile offenders the opportunity to leave prison in order to die" but with the intent that juvenile offenders will be able to "live part of their lives in society." *See Moore* at ¶ 46. "*Graham* is less concerned about how many years an offender serves in the long term than it is about the offender having an opportunity to seek release while it is still meaningful." *Moore* at ¶ 63. Thus, pursuant to *Graham* and *Moore*, the constitutional requirement is that the juvenile offender be given the chance to seek release while his or her life "is still meaningful"— *a meaningful opportunity to seek a meaningful life* outside of prison.

{¶ 32} I emphasize that allowing Strowder an earlier chance at parole does not guarantee release. The *Graham* court recognized that "those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving

---

[1] The most recent report kept the same calculation. *See* U.S. Sentencing Commission Quarterly Data Report (through Mar. 31, 2019), at A-4, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_2nd_ Y19. pdf (accessed July 30, 2019).

of incarceration for the duration of their lives." *Id.* at 75. Moreover, as a practical matter, it is unlikely that Strowder, a violent offender with a life-tail sentence, will be granted parole the first time he appears before the parole board. *See* Ohio Department of Rehabilitation and Correction, Calendar Year 2018 Report, https://drc.ohio.gov/Portals/0/PAROLE%20BOARD%20REPORT_CY2018%20ANNUAL.pdf (accessed Aug. 6, 2019) (In 2018, 1,269 inmates appeared before the parole board. The board granted parole to only 226 (17.8%).)

{¶ 33} Although neither the United States Supreme Court nor the Ohio Supreme Court has given numeric figures when defining "meaningful opportunity" in years, the courts provide guidance to sentencing courts by highlighting what defining principles require different treatment of juveniles under the constitution. For example, courts must recognize a juvenile offender's "capacity for change and limited moral culpability," offer "hope of restoration," give a "chance for fulfillment outside prison walls," and "for reconciliation with society." *Graham* at 74-79. This recognition includes the opportunity for the juvenile offender to achieve "maturity of judgment and self-recognition of human worth and potential." *Id.* at 79.

{¶ 34} Sentencing courts must also keep in mind that the United States Supreme Court has equated the "meaningful opportunity for release based on demonstrated maturity and rehabilitation" with a "hope for some years of life outside prison walls." *Carter v. State*, 461 Md. 295, 356, 192 A.3d 695 (2018), citing *Montgomery v. Louisiana*, 577 U.S.___, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016); *see also Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127 (finding that

juvenile nonhomicide offender must be given a chance to demonstrate the change they have undergone since committing their crimes so that they can potentially reenter society with enough time left for a meaningful life outside of prison).

{¶ 35} As other states have recognized, *Graham,* 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825, envisioned "more than the mere act of release or a de minimis quantum of time outside prison." *People v. Contreras*, 4 Cal.5th 349, 368, 411 P.3d 445, 229 Cal. Rptr.3d 249 (2018). *Graham* spoke of the chance to rejoin society in qualitative terms — "the rehabilitative ideal" — that contemplates a sufficient period to achieve reintegration as a productive and respected member of the citizenry. *Contreras* at *id.* Because courts have recognized that children are different from adults, children convicted in criminal court must be given the opportunity to regain their "value and place in society." *Graham* at 79. As the Ohio Supreme Court recognized in *Moore*, *Graham's* holding is more than mere formalism. Instead, *Moore* determined that the "key principle" for ensuring that a juvenile nonhomicide offender receives a constitutional sentence is that the juvenile offender have the opportunity to someday demonstrate that they are worthy to reenter society. *Id.* at ¶ 63.

{¶ 36} "An opportunity to obtain release does not seem 'meaningful' or 'realistic' within the meaning of *Graham* if the chance of living long enough to make use of that opportunity is roughly the same as a coin toss." *Contreras* at 364. Here, the trial court did not grant Strowder a meaningful opportunity for release when it

sentenced him to a term of years that precludes parole board review until he is 61 years old.

{¶ 37} It is clear from the sentencing transcript that the trial court failed to follow the mandate we set forth in *Strowder I*—to resentence Strowder to a term of years that would afford him a "meaningful opportunity for parole." *Strowder I* at ¶ 45. Instead, the trial court determined what sentence length would fall short of Strowder's life expectancy, asking the parties if they had consulted actuarial tables, before stating that a sentence of 34 years was "under the life expectancy. If anyone had checked and we checked the tables, I believe the life expectancy is upward of 70 and 80 years depending on race and other things." But *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, was not only concerned with release while an offender could create a meaningful life; *Moore* emphasized that courts should not "undertake fine line-drawing to determine how close to the mark a sentencing court can come to a defendant's life expectancy." *Id.* at ¶ 82, citing *Null*, 836 N.W.2d 41, citing *Graham*. "The important factor, instead, is the recognition that children have lessened moral culpability and are redeemable and so must be given a chance to demonstrate the change they have undergone since committing their crimes." *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, at *id.* Given the immense challenges facing a person who spends decades in prison, I simply do not agree that release from prison after spending the majority of one's life incarcerated, from adolescence into one's sixties, allows the opportunity to reenter society with enough time left for a "meaningful and productive life outside prison." Contrary to

this court's mandate in *Strowder I*, "fine line-drawing" is exactly what the trial court did.

{¶ 38}   There are two other problems with the court's sentence.  First, the court's use of actuarial tables raises concerns about equal protection, given the differences in life expectancy among races, genders, etc.  Second, life expectancy is an average.   Not surprisingly, the life expectancy of people who have been imprisoned for most of their lives is not the same as people who have spent the majority of their lives outside of prison.  *See State v. Gilbert*, Wash. App. No. 33794-4-III, 2018 Wash. App. LEXIS 740, ¶ 108 (Apr. 3, 2018) (Fearing, J., dissenting), *rev'd,* 193 Wash.2d 169, 438 P.3d 133 (2019) ("Court decisions fail to mention that incarceration decreases one's life expectancy. * * * [F]or every year spent behind bars, overall life expectancy decreases two years.  This evidence suggests that a juvenile offender sentenced to a fifty-year term of imprisonment may never experience freedom.")  *See also People v. Buffer*, 2019 IL 122327, ¶ 66, citing Deborah LaBelle, Michigan Life Expectancy Data for Youth Serving Natural Life Sentences (2013), available at http://www.lb7.uscourts.gov/documents/17-12441.pdf [https://perma.cc/9PSY-3B6Q] (accessed July 30, 2019) (concluding that Michigan juveniles sentenced to natural life sentences have an average life expectancy of 50.6 years); Straley, *Miller's Promise: Re-Evaluating Extreme Criminal Sentences for Children*, 89 Wash. L. Rev. 963, 986, fn. 142 (2014) ("The high levels of violence and communicable diseases, poor diets, and shoddy health care [in prison] all contribute to a significant reduction in life expectancy behind

bars."); *Null* at *id.* (acknowledging that "long-term incarceration [may present] health and safety risks that tend to decrease life expectancy as compared to the general population"); *United States v. Tavares*, 436 F.Supp.2d 493, 500 (E.D.N.Y. 2006) (finding that persistent problems in prisons of rape, gang violence, use of excessive force by officers, and contagious diseases lead to a lower life expectancy).

{¶ 39} Courts in other states have determined that life expectancy data should not be used when determining whether a juvenile offender's sentence violates the Eighth Amendment. The Supreme Court of Iowa held that whether a sentence violates *Graham* must not "turn on the niceties of epidemiology, genetic analysis, or actuarial sciences in determining precise mortality dates." *Null* at *id.* The Supreme Court of New Jersey held that "[j]udges * * * should not resort to general life-expectancy tables when they determine the overall length of a sentence," since "those tables rest on informed estimates, not firm dates, and the use of factors like race, gender, and income could raise constitutional issues." *State v. Zuber*, 227 N.J. 422, 449, 152 A.3d 197 (N.J. 2017). S*ee also Cloud*, 2014 WY 113, 334 P.3d 132; Cummings and Colling, *There is No Meaningful Opportunity in Meaningless Data: Why it is Unconstitutional to Use Life Expectancy Tables in Post-Graham Sentences*, 18 U.C. Davis J. Juv.L. & Policy 267 (2014) (criticizing Colorado courts' reliance on life expectancy tables in sentencing juvenile offenders).

{¶ 40} I recognize that some Ohio courts have upheld long-term sentences for nonhomicide juvenile offenders post-*Graham,* 560 U.S. at 75, 130 S.Ct. 2011, 176 L.Ed.2d 825 and *Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127. In

*Watkins*, 10th Dist. Franklin Nos. 13AP-133 and 13AP-134, 2018-Ohio-5137, *discretionary appeal not allowed*, 155 Ohio St.3d 1422, 2019-Ohio-1421, 120 N.E.3d 868, the Tenth District Court of Appeals determined that opportunity for judicial release at age 50 complies with the Eighth Amendment as interpreted by *Graham* and *Moore*. *Watkins* at ¶ 25. Based on *Moore*, *Watkins* found that term-of-years sentences that exceed a juvenile defendant's life expectancy for nonhomicide offenses may be acceptable when a defendant has the opportunity to demonstrate maturity and rehabilitation before his or her "geriatric" years. *Watkins* at ¶ 30.

{¶ 41} *Watkins* concluded that *Moore* "made clear" that juvenile sentences run afoul of the Eighth Amendment when: (1) the aggregate sentence exceeds the juvenile's life expectancy; *and* (2) the juvenile has no meaningful opportunity to obtain release and reenter society based upon demonstrated maturity and rehabilitation prior to the completion of the sentence. *Watkins* at ¶ 22. *Watkins* concluded that the appellant's sentence was constitutional because he would have the opportunity for judicial release at age 50, which would give him the "opportunity to seek release while it is still meaningful." *Id.* at ¶ 32.

{¶ 42} *Watkins* interpreted *Moore* to mean a juvenile nonhomicide sentence does not violate the Eighth Amendment even if the aggregate sentence exceeds the juvenile's life expectancy so long as the juvenile has a meaningful opportunity to obtain release and reenter society based upon demonstrated maturity and rehabilitation prior to the completion of his or her lengthy prison term. While

*Watkins* recognized "significant challenges that confront any defendant who reenters society after many years of incarceration," the court found that the defendant would have "the opportunity to demonstrate maturity and rehabilitation at an age when most people are still in good health and in their prime working years":

> [T]he possibility for judicial release at age 50 grants Watkins the opportunity to reenter society with enough time left for a meaningful and productive life outside prison. To conclude otherwise would suggest there is not enough time left after a person reaches age 50 for life to be meaningful and productive. This is a proposition we cannot accept.

*Id.* at ¶ 28.

{¶ 43} I disagree with the analysis in *Watkins,* 10th Dist. Franklin Nos. 13AP-133 and 13AP-134, 2018-Ohio-5137. The court relied on two Ohio cases where the appellate courts held that eligibility for parole at age 58 or 59 does not violate the Eighth Amendment: *State v. Taylor*, 2d Dist. Montgomery No. 27879, 2018-Ohio-4628, ¶ 11, and *State v. Burns*, 2d Dist. Montgomery No. 27374, 2018-Ohio-1419, ¶ 21-23. But *Taylor* and *Burns* concerned juvenile *homicide* offenders — Taylor, who was convicted of murder and Burns, who was convicted of aggravated murder. *See Graham,* 560 U.S. at 69, 130 S.Ct. 2011, 176 L.Ed.2d 825 (distinguishing nonhomicide offenses from homicide offenses "in a moral sense" because nonhomicide juvenile offenders "are categorically less deserving of the most serious forms of punishment than are murderers.")

{¶ 44} The majority in this case also rely on *Taylor* and *Burns*; because those cases involve homicide offenses, such reliance is misplaced. In addition, Strowder will be 11 years older than Watkins when he first becomes eligible for parole. Moreover, *Watkins'* conclusion that it cannot accept a proposition that one cannot have a meaningful life after age 50: (1) ignores the harsh realities of spending one's entire adult life incarcerated, (2) ignores the difference between continuing a meaningful life into one's 50s versus attempting to start a meaningful life after being incarcerated for the majority of one's life. *See Casiano*, 317 Conn. at 78, 115 A.3d 1031.

{¶ 45} In a recent case from our district, *State v. Collins*, 8th Dist. Cuyahoga Nos. 106590, 107341, 2019-Ohio-249, ¶ 21, this court upheld a 29-year sentence where the juvenile offender would be eligible for judicial release after 14.5 years, when he will be 32 years old. The current case is distinguishable; Strowder was sentenced to a 34-years-to-life sentence and will not be eligible for parole until he is 61, almost twice the age of the offender in *Collins*.

{¶ 46} When a juvenile is sentenced to a long term-of-years sentence, as occurred in this case, the juvenile often ends up serving more years than his or her adult equivalent. *See Moore,* 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, at ¶ 62, quoting *Graham,* 560 U.S. at 50, 130 S.Ct. 2011, 176 L.Ed.2d 825 (Under a life-without-parole sentence, a juvenile offender "will on average serve more years and a greater percentage of his [or her] life in prison than an adult offender.")

The same mathematical reality — that a person who begins serving a life sentence as a juvenile serves a greater number of years and a greater percentage of his or her life in prison than a person who starts serving his sentence as an adult — extends to multidecade sentences that outstrip a juvenile's life expectancy. The practical reality is that juveniles sentenced to terms extending beyond their life expectancies are serving the lengthiest sentences — in terms of the number of years actually served in prison — that a state can impose.

*Moore* at ¶ 53.

{¶ 47} I also emphasize that, in Ohio, Strowder, who is a juvenile nonhomicide offender, has a parole eligibility date that far exceeds the parole eligibility date for an offender sentenced to life in prison for *murder*. *See* R.C. 2903.02 and 2929.02 (With some exceptions, a person convicted of murder shall be imprisoned for an indefinite term of 15 years to life.). In addition, although I recognize our focus is the age that Strowder is eligible for parole and whether, at that age, he will have a meaningful opportunity to reenter society, the court should not discount that role of the parole board in determining his release; the discretion of the Ohio Adult Parole Authority and the parole board over parole matters is "wide-ranging." *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St.3d 375, 2014-Ohio-4270, 24 N.E.3d 1132, ¶ 26.

A prisoner has no constitutional or statutory right to parole. *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.*, 81 Ohio St.3d 267, 268, 1998 Ohio 631, 690 N.E.2d 887 (1998). Because there is no such right, a prisoner who is denied parole is not deprived of liberty as long as state law makes the parole decision discretionary. *Id.* at 125. Under R.C. 2967.03, the parole decision in Ohio is discretionary.

*Keith* at ¶ 19.

{¶ 48} If an inmate is denied parole at his or her hearing, under most circumstances, the board need not hold another hearing for up to ten years. Ohio Adm.Code 5120:1-1-10(B) ("If the parole board denies parole at an inmate's regularly constituted hearing and does not set a projected release date, then the board must set a time for a subsequent hearing not more than ten years from the date of the first hearing.").[2]

{¶ 49} The majority posits that Strowder's sentence is constitutional because it is not a "functional life sentence" and provides him with a "realistic and meaningful opportunity to demonstrate maturity and reform" and the "potential to return to society within his normal life expectancy." I disagree. While the facts of this case, as in *Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, 76 N.E.3d 1127, certainly do not "engender a sense of sympathy" for Strowder, the mandate in *Strowder I* was clear and, for me, the question is simple: Will Strowder have a meaningful opportunity to reenter society and have a meaningful life after being incarcerated for almost his entire adult life, from age 17 to 61, given all the circumstances, risks, and dangers attendant to prison life? I opine that he will not

---

[2] Although some progress is being made in Ohio to reform the parole system and parole boards, *see* https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/ 050119 (accessed Aug. 6, 2019), Ohio is lagging behind other states. Contrast Pennsylvania, which has one of the largest populations of prisoners serving life without parole (5,102 prisoners, of whom 480 were juveniles at the time of their offense), but, where, on average, 58 percent of parole applicants were granted parole between February 2015 and January 2016. *False Hope: How Parole Systems Fail Youth Serving Extreme Sentences*, https://www.aclu.org/sites/default/files/field_document/121416-aclu-pa-role reportonlinesingle.pdf (accessed Aug. 6, 2019).

and, therefore, under *Graham,* 560 U.S. at 50, 130 S.Ct. 2011, 176 L.Ed.2d 825, and *Moore*, his sentence is unconstitutional.

**{¶ 50}** "[I]t is important that the spirit of the law not be lost in the application of the law":

> The spirit of the constitutional mandates of *Miller* [567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407] and *Graham* instruct that much more is at stake in the sentencing of juveniles than merely making sure that parole is possible. In light of our increased understanding of the decision making of youths, the sentencing process must be tailored to account in a meaningful way for the attributes of juveniles that are distinct from adult conduct. At the core of all of this also lies the profound sense of what a person loses by beginning to serve a lifetime of incarceration as a youth.

*Moore* at ¶ 80, citing *State v. Ragland*, 836 N.W.2d 107, 121 (Iowa 2013).

**{¶ 51}** A juvenile nonhomicide offender sentenced to a 34-years-to-life sentence when the first opportunity for parole is at age 61 violates the Eighth Amendment's prohibition on cruel and unusual punishment as set forth in *Graham* and *Moore*. I would sustain the assignment of error and reverse Strowder's sentence.