[Cite as *State v. Tyson*, 2020-Ohio-5049.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 1-19-72

    v.

DURAN T. TYSON, JR.,                  O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2019 0334

**Judgment Affirmed**

Date of Decision: October 26, 2020

APPEARANCES:

    *Kimberly Kendall Corral* and *Megan M. Patituce* for Appellant

    *Jana E. Emerick* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Duran T. Tyson, Jr. ("Tyson"), appeals the November 4, 2019 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a May 30, 2019 incident in which Tyson and another male, Zyshon Stiggers ("Stiggers"), robbed a gas station at gunpoint in Lima, Ohio. The following day, Deputy Barry Friemoth ("Deputy Friemoth"), an officer with the Allen County Sheriff's Office, was investigating the incident near Tyson's residence when he observed Tyson walking in the area. Deputy Friemoth announced that he was a law enforcement officer and began to approach Tyson. In response, Tyson produced a gun and fired multiple shots at Deputy Friemoth before fleeing to his residence. Deputy Friemoth was not physically injured during the encounter. Shortly thereafter, Tyson was taken into law enforcement custody.

{¶3} On June 5, 2019, a ten count complaint was filed against Tyson in the Allen County Court of Common Pleas, Juvenile Division. (Doc. No. 1). The matter was bound over to the Allen County Court of Common Pleas, and on September 12, 2019, the Allen County Grand Jury indicted Tyson on eight counts: Count One of aggravated robbery in violation of R.C. 2911.01(A)(1), (C), a first-degree felony; Count Two of attempted murder in violation of R.C. 2923.02 and R.C. 2903.02(A), (D), a first-degree felony; Count Three of felonious assault in violation of R.C.

2903.11(A)(2), (D)(1)(a), a first-degree felony; Count Four of improperly discharging a firearm at or into a habitation or a school safety zone in violation of R.C. 2923.161(A)(1), (C), a second-degree felony; Count Five of discharge of a firearm at or near prohibited premises in violation of R.C. 2923.162(A)(3), (C)(2), a third-degree felony; Count Six of receiving stolen property in violation of R.C. 2913.51(A), (C), a fourth-degree felony; Count Seven of carrying a concealed weapon in violation of R.C. 2923.12(A)(2), (F)(1), a fourth-degree felony; and Count Eight of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. (Doc. Nos. 1, 2). Counts One, Two, and Three contained a firearm specification under R.C. 2941.145(A). (Doc. No. 2). On September 20, 2019, Tyson appeared for arraignment and entered pleas of not guilty to the counts in the indictment. (Doc. No. 12).

{¶4} On October 1, 2019, under a negotiated plea agreement, Tyson withdrew his pleas of not guilty and entered pleas of guilty to Counts One, Two, and Seven, as well as the specifications associated with Counts One and Two. (Doc. Nos. 18, 19). In exchange, the State agreed to recommend dismissal of the remaining counts in the indictment. (*Id.*). The trial court accepted Tyson's guilty pleas, found him guilty of Counts One, Two, and Seven and the associated specifications, and ordered a presentence investigation ("PSI"). (Doc. No. 19). In

addition, the trial court dismissed the remaining counts of the indictment. (*Id.*). That same day, the trial court filed its judgment entry of conviction. (*Id.*).

{¶5} On November 4, 2019, the trial court sentenced Tyson to a prison term of 9 to 13 ½ years as to Count One, a prison term of 9 to 13 ½ years as to Count Two, and a definite term of 12 months in prison as to Count Seven. (Doc. No. 26). As to the firearm specifications, the trial court sentenced Tyson to a mandatory prison term of three years as to the specification associated with Count One and a mandatory prison term of three years as to the specification associated with Count Two. (*Id.*). The trial court ordered that the sentences and specifications be served consecutively to each other for an aggregate term of six years' mandatory imprisonment plus 19 to 23 ½ years' imprisonment. (*Id.*). That same day, the trial court filed its judgment entry of sentence. (*Id.*).

{¶6} On December 2, 2019, Tyson filed his notice of appeal. (Doc. No. 32). He raises two assignments of error for our review, which we address together.

**Assignment of Error No. I**

**The trial court erred in sentencing Mr. Tyson to an indefinite term of incarceration of 25-29.5 years.**

**Assignment of Error No. II**

**The trial court erred in sentencing Mr. Tyson to serve consecutive sentences.**

{¶7} In his assignments of error, Tyson argues that his sentence is not supported by the record and that it is otherwise contrary to law. Specifically, in his first assignment of error, Tyson argues that the trial court erred by imposing a sentence of 25 to 29.5 years of imprisonment. Tyson argues that his sentence is unsupported by the record and inconsistent with the provisions of R.C. 2929.11 and 2929.12. Tyson further argues that his sentence is unconstitutional because he was a juvenile when he was sentenced. He claims that his sentence is "tantamount to a life sentence" and that it constitutes cruel and unusual punishment in violation of the Eighth Amendment. In his second assignment of error, Tyson alleges that the record does not support the trial court's imposition of consecutive sentences.

{¶8} "Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence 'only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law.'" *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15 and 12-16-16, 2017-Ohio-2920, ¶ 8, quoting *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. "Clear and convincing evidence is that '"which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."'" *Id.*, quoting *Marcum* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶9}** We begin with Tyson's first assignment of error, in which he argues that the trial court erred by imposing an aggregate sentence of 25 to 29 ½ years in prison. "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. As a fourth-degree felony, carrying a concealed weapon carries a sanction of 6 to 18 months' imprisonment. R.C. 2923.12(A)(2), (F)(1); R.C. 2929.14(A)(4). As first-degree felonies, aggravated robbery and attempted murder carry a stated minimum term of 3 to 11 years. R.C. 2911.01(A)(1), (C); R.C. 2923.02; R.C. 2903.02(A), (D); R.C. 2929.14(A)(1)(a). Each firearm specification carried a three-year mandatory prison term. R.C. 2941.145(A). The trial court also ordered all of Tyson's sentences to run consecutively. Because (1) Tyson was sentenced on more than one felony, (2) aggravated robbery and attempted murder are qualifying felonies of the first degree, and (3) the trial court ordered that Tyson's prison terms be served consecutively, Tyson's maximum sentence, not including the firearm specifications, is the sum of the minimum terms imposed for Tyson's aggravated robbery and attempted murder convictions, the definite term imposed for Tyson's carrying a concealed weapon conviction, plus fifty per cent of the longest definite term for the most serious felony being sentenced. R.C. 2929.144(B)(2), (4).

{¶10} The trial court sentenced Tyson to 3 years' mandatory imprisonment for each of the firearm specifications. The trial court further sentenced Tyson to a minimum stated term of 9 years' imprisonment for first-degree felony aggravated robbery, a minimum stated term of 9 years' imprisonment for first-degree felony attempted murder, and a definite sentence of 12 months for fourth-degree felony carrying a concealed weapon. Thus, the trial court sentenced Tyson to a minimum term of 19 years' imprisonment to a maximum term of 23 ½ years' imprisonment plus an additional 6 years' imprisonment for the specifications. Accordingly, each of Tyson's individual sentences are within the corresponding statutory ranges. Further, the consecutive sentences fall within the appropriate statutory ranges and were appropriately calculated. "'[A] sentence imposed within the statutory range is "presumptively valid" if the [trial] court considered applicable sentencing factors.'" *Nienberg*, 2017-Ohio-2920, at ¶ 10, quoting *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶11} R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government

resources." R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs courts to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* In addition, R.C. 2929.11(B) instructs that a sentence imposed for a felony "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10, citing R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12.'" *Id.* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶12} Here, it is clear from the record that the trial court sentenced Tyson after considering the purposes of felony sentencing set forth in R.C. 2929.11(A) and the R.C. 2929.12(B)-(E) factors relating to the seriousness of Tyson's conduct and the likelihood of his recidivism. At the sentencing hearing, the trial court discussed

the R.C. 2929.12(B) factors and found that the victims of the attempted murder and the aggravated robbery suffered "serious psychological harm" as a result of the offenses. (Nov. 4, 2019 Tr. at 8-9). *See* R.C. 2929.12(B)(2). The trial court also found that the aggravated robbery was committed as part of an organized criminal activity. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(B)(7). Further, the trial court stated that it considered the R.C. 2929.12(C) factors indicating that the offender's conduct is less serious than conduct normally constituting the offense, but found that none of the factors applied. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(C).

{¶13} The trial court also reviewed the R.C. 2929.12(D) factors indicating that the defendant is likely to commit future crimes and noted that the defendant has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(D)(3). With respect to the R.C. 2929.12(E) factors indicating that the defendant is not likely to commit future crimes, the trial court noted that due to his age, Tyson had not been convicted of or pleaded guilty to any criminal offenses as an adult. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(E)(2). The trial court also found that the defendant showed genuine remorse. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(E)(5). The trial court noted that although Tyson's ORAS score was 19, indicating a moderate risk of reoffending, "the defendant's failure to respond favorably to sanctions imposed for

the adjudications as a delinquent child would outweigh any factors indicting a less likelihood to recommit." (Nov. 4, 2019 Tr. at 9-10). (*See* PSI).

{¶14} Finally, the trial court found that a prison term is "consistent with the purposes of and principles" of felony sentencing. (Nov. 4, 2019 Tr. at 10). The trial court incorporated its findings into its sentencing entry. (Doc. No. 26).

{¶15} Nevertheless, Tyson argues that the trial court's findings were not supported by the record. First, Tyson argues that the trial court erred by finding that the aggravated robbery charge was part of an organized criminal activity under R.C. 2929.12(B)(7). Specifically, Tyson alleges that although he had an accomplice during the commission of the aggravated robbery, the robbery was not committed as part of an organized criminal activity under R.C. 2929.12(B)(7). We disagree.

{¶16} "The fact that an offender had an accomplice is not sufficient to constitute organized criminal activity." *State v. Horch*, 3d Dist. Union No. 14-03-27, 2004-Ohio-1509, ¶ 14, citing *State v. Roberson*, 141 Ohio App.3d 626 (6th Dist.2001). Rather, to support a finding of organized criminal activity, the record must demonstrate that Tyson and his accomplice *planned* to engage in the aggravated robbery. *State v. Nichols*, 11th Dist. Lake No. 2005-L-017, 2006-Ohio-2934, ¶ 85, citing *State v. Bradford*, 11th Dist. Lake No. 2001-L-175, 2003-Ohio-3495, ¶ 28. That is, the record must demonstrate that the crime was premeditated

rather than spontaneous. *See State v. Sari*, 11th Dist. Lake No. 2016-L-109, 2017-Ohio-2933, ¶ 26.

{¶17} Here, the record supports the trial court's finding that Tyson's aggravated robbery charge was part of an organized criminal activity under R.C. 2929.12(B)(7). First, Tyson's trial counsel conceded at the sentencing hearing that the aggravated robbery was committed as part of an organized criminal activity. (Nov. 4, 2019 Tr. at 4). Further, the facts detailed in the PSI support the trial court's finding that the aggravated robbery was committed as part of an organized criminal activity. According to the information contained in the PSI, on May 30, 2019, Tyson and Stiggers entered a gas station wearing masks and brandishing firearms and demanded the money in the cash register while pointing the firearms at the employees. (PSI). Tyson and Stiggers took money from the cash register and numerous packages of cigarettes and fled the building. (*Id.*).

{¶18} Additionally, one of the gas station employees recalled seeing Tyson enter the gas station several hours before the robbery to "scop[e] out" the business and confirm the location of the surveillance cameras. (*Id.*). After leaving the gas station, Tyson entered a vehicle on the passenger's side door. (*Id.*). Law enforcement officers later determined that the vehicle belonged to Stiggers's sister, and Stiggers's sister confirmed that she allows Stiggers to borrow her car, including on the night of the incident. (*Id.*).

{¶19} Thus, there is clear and convincing evidence from which the trial court could find that the aggravated robbery occurred as part of an organized criminal activity under R.C. 2929.12(B)(7). *See State v. Allen*, 10th Dist. Franklin No. 10AP-487, 2011-Ohio-1757, ¶ 3, 30 (finding that Appellant's actions of propping open the door at a restaurant where he worked to allow his co-defendants to enter the restaurant with firearms and take money from the register was sufficient to conclude that the incident occurred as part of an organized criminal activity); *State v. Turner*, 6th Dist. Lucas No. L-16-1132, 2017-Ohio-995, ¶ 17-19 (concluding that the aggravated robbery charge was part of organized criminal activity where Appellant participated in concert with three other individuals to carry out the offense).

{¶20} Tyson also argues that the record does not support the trial court's finding that he did not respond favorably to sanctions imposed for adjudications as a delinquent child. Although Tyson admits that he did have prior involvement with the juvenile justice system, Tyson argues that the involvement was "minor" and that he responded favorably to the sanctions imposed by the juvenile justice system. We disagree.

{¶21} Tyson's PSI indicates that he was adjudicated a delinquent child on four occasions, beginning in 2015, when Tyson was only 13 years old. (PSI). Tyson's juvenile record included persistent disorderly conduct, menacing, failure to comply, and OVI. (*Id.*). Tyson also had an unauthorized use of a vehicle charge

pending in the Allen County Juvenile Court when the present case was filed. (*Id.*). Accordingly, we find that the record supports the trial court's finding that Tyson did not respond favorably to sanctions imposed for adjudications as a delinquent child. *See State v. King*, 3d Dist. Defiance No. 4-04-33, 2005-Ohio-3760, ¶ 16-17 (finding that the trial court did not err by using Appellant's juvenile record as justification for imposing a maximum, consecutive sentence and noting that R.C. 2929.12(D) requires a trial court to consider whether a defendant had previously been adjudicated delinquent).

{¶22} Finally, Tyson argues that the trial court did not assign the proper weight to the applicable mitigating and aggravating factors. However, we do not find Tyson's argument persuasive. The trial court has broad discretion to determine the relative weight to assign the R.C. 2929.12 factors, and based on this record, we cannot find any fault in the trial court's decision to afford greater weight to the aggravating factors than the mitigating factors. *See Smith*, 2015-Ohio-4225, at ¶ 15.

{¶23} Having determined that Tyson's sentence is supported by the record and consistent with the provisions of R.C. 2929.11 and 2929.12, we next address Tyson's argument that the trial court erred by imposing a sentence that is tantamount to a life sentence, in violation of the Eighth Amendment. Tyson argues that he was a juvenile during the commission of the crimes and that his aggregate prison term

affords him no meaningful opportunity for release from incarceration or to demonstrate rehabilitation. For the reasons that follow, we disagree.

{¶24} The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, states that "[e]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted." "A key component of the Constitution's prohibition against cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *State v. Moore*, 149 Ohio St.3d 557, 2016-Ohio-8288, ¶ 31, quoting *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544 (1910). "To constitute cruel and unusual punishment, 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" *State v. Anderson*, 151 Ohio St.3d 212, 2017-Ohio-5656, ¶ 27, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964).

{¶25} In recent years, the Supreme Court of the United States has addressed the application of the Eighth Amendment to sentences involving juvenile offenders. *See, e.g.*, *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005) (prohibiting the imposition of the death penalty on defendants who commit capital crimes while under the age of 18); *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012) (prohibiting the mandatory imposition of life-without parole sentences on offenders who commit homicide as juveniles). Notably, in *Graham v. Florida*, the court

prohibited the imposition of life imprisonment without parole on juvenile nonhomicide offenders. *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010). However, the court in *Graham* did not address the constitutionality of an aggregate term-of-years prison sentence for nonhomicide offenses that extends beyond the juvenile offender's life expectancy without the possibility of release.

{¶26} In *State v. Moore*, the Supreme Court of Ohio considered this issue and held that, "pursuant to *Graham*, a term-of-years prison sentence that exceeds a defendant's life expectancy violates the Eighth Amendment to the United States Constitution when it is imposed on a juvenile nonhomicide offender." *Moore* at ¶ 1. The court concluded that sentences for terms of years that extend beyond the offender's life expectancy are "functional life sentences." *Id.* at ¶ 59. In deciding *Moore*, the Supreme Court of Ohio relied principally on the court's reasoning in *Graham* that juvenile defendants "who did not kill or intend to kill" have "twice diminished moral culpability" due to "the nature of the crime and the juvenile's age." *Moore* at ¶ 36. The court in *Moore* noted that "[b]ecause of the characteristics of youth, a depraved crime committed by a juvenile may not be indicative of an irredeemable individual." *Id.* at ¶ 38. Further, "[t]he inherently diminished moral culpability and other characteristics of juvenile offenders means that the recognized, legitimate goals of penal sanctions—retribution, deterrence, incapacitation, and

rehabilitation—do not justify the imposition of the harshest penalties on juveniles who have committed nonhomicide crimes[.]" *Id.* at ¶ 39.

{¶27} Tyson argues that his sentence, which consists of an aggregate term-of-years prison sentence for nonhomicide offenses, is unconstitutional pursuant to *Moore* because it is a functional life sentence. We disagree.

{¶28} In *Moore*, the defendant was 15 years old when he committed the underlying nonhomicide offenses and was sentenced to an aggregate term of 112 years in prison. *Id.* at ¶ 2, 17. In calculating Moore's eligibility for judicial release, the court noted that of his 112-year sentence, he had three four-year sentences for firearm specifications and six ten-year sentences for rape that were mandatory terms of imprisonment. *Id.* at ¶ 30. He was eligible to petition the court for judicial release after serving 77 years in prison, when he was 92 years old. *Id.* The court compared Moore's eligibility for judicial release to the life expectancy statistics for an individual of Moore's age, race, and sex contained in the National Vital Statistics Reports released by the U.S. Department of Health and Human Services. *Id.* The Court determined that because Moore would not be eligible to petition the trial court for judicial release until he was 92 years old, the sentence extended beyond Moore's life expectancy and precluded any "meaningful chance to demonstrate rehabilitation and obtain release." *Id.* at ¶ 30, 59. Accordingly, the court determined that Moore's sentence was unconstitutional under the Eighth Amendment. *Id.* at ¶ 64.

{¶29} Here, Tyson was 17 years old when he committed the underlying offenses. He was sentenced to a mandatory term of 6 years in prison and then a nonmandatory term of 19 to 23 ½ years in prison. According to the National Vital Statistics Reports released by the U.S. Department of Health and Human Services, a male who was 17-18 years of age in 2017 had a life expectancy of an additional 59.8 years; a 17 to 18 year-old black male had a life expectancy of an additional 56.2 years.[1] U.S. Department of Health and Human Services, *National Vital Statistics Reports*, Volume 68, Number 7, at 12-13, 24-25 (2019), http://www.cdc.gov/nchs/data/nvsr/nvsr68/nvsr68_07-508.pdf (accessed Sept. 15, 2020). Thus, Tyson's life expectancy extends beyond even his maximum aggregate sentence of 29 ½ years.

{¶30} Moreover, "*Moore* implicitly recognized that judicial release is a sufficient procedural mechanism for giving a juvenile offender the opportunity to demonstrate sufficient maturity and rehabilitation to reenter society." *State v. Watkins*, 10th Dist. Franklin Nos. 13AP-133 and 13AP-134, 2018-Ohio-5137, ¶ 26. *See Moore* at ¶ 30, 141-144. Here, only six years of Tyson's sentence are mandatory. Accordingly, he is able to apply for judicial release for the first time after serving 15 ½ years of his sentence, when he achieves approximately 32-33 years of age. R.C. 2929.20(A)(6), (C)(5). Accordingly, we find that Tyson's

---

[1] The PSI indicates that Tyson is biracial and his racial background is black and Caucasian.

sentence does not extend beyond his life expectancy or preclude Tyson from a meaningful chance to demonstrate rehabilitation and obtain release from incarceration within his life expectancy. Thus, we hold that Tyson's sentence is not a functional life sentence and does not violate the Eighth Amendment as interpreted by *Graham* and *Moore*. *See State v. Collins*, 8th Dist. Cuyahoga Nos. 106590 and 107341, 2019-Ohio-249, ¶ 21 (concluding that Appellant's sentence is not a functional life sentence because the juvenile offender will be able to petition the trial court for judicial release after serving 14 ½ years of his sentence, at which time he will be approximately 32 years of age); *State v. Wiesenborn*, 2d Dist. Montgomery No. 28224, 2019-Ohio-4487, ¶ 12, 50 (holding that *Moore* was not applicable to an appellant who was sentenced to a prison term of 78 ½ years for a number of offenses committed both as an adult and a juvenile because Appellant will be eligible for judicial release at age 52 for the sentences imposed for offenses Appellant committed as a juvenile); *Watkins* at ¶ 32 (holding that Watkins's sentence does not violate the Eighth Amendment as interpreted by *Graham* and *Moore* because Watkins will have the opportunity for judicial release at age 50); *State v. Strowder*, 8th Dist. Cuyahoga No. 107855, 2019-Ohio-4573, ¶ 14 (finding that the juvenile offender's sentence did not constitute a functional life sentence because he will be eligible for judicial release at age 61).

**{¶31}** We now turn to Tyson's second assignment of error, in which he argues that the record does not support the imposition of consecutive sentences. "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides:

> (4) * * * [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a)   The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b)   At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no

single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶32} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record when imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11; *State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 33. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*; *Id.*

{¶33} The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that

the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶34} Tyson does not argue that the trial court failed to make the requisite consecutive-sentencing findings under R.C. 2929.14(C)(4). Rather, Tyson contends that the record does not support the trial court's findings. At the sentencing hearing, the trial court stated:

> The Court has decided that the defendant shall serve the prison terms consecutively under 2929.14 because the Court finds that consecutive sentencing is necessary to protect the public from future crime and also to punish the defendant. I find that consecutive sentences are not disproportionate to the seriousness of the conduct and the danger that the defendant poses to the public. I also find that with respect to the Robbery and the Attempted Murder, those multiple offenses were committed as part of a course of conduct and I find the harm caused by the two multiple offenses was so great and unusual that no single prison term for any of the offenses committed would adequately reflect the seriousness of the defendant's conduct.

(Nov. 4, 2019 Tr. at 11-12). The trial court incorporated those findings into its sentencing entry. (Doc. No. 26). In its sentencing entry, the trial court stated:

The Court has decided that the defendant shall serve the prison terms consecutively, pursuant to R.C. 2929.14(C)(4), because the Court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public, and the Court also finds the following: * * * [a]t least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct.

(*Id*.). Accordingly, the record reflects that the trial court made the appropriate R.C. 2929.14(C) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry.

{¶35} Nonetheless, Tyson argues that the record does not support the trial court's finding that the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of Tyson's conduct. (Appellant's Brief at 12-13). Specifically, Tyson argues that

because only the victim of the attempted murder charge provided a victim impact statement, the trial court was not able to find that the harm caused by the two or more offenses was great or unusual enough to justify the imposition of consecutive sentences. We disagree.

{¶36} At the sentencing hearing, Deputy Friemoth gave a victim impact statement and stated that the incident had a detrimental impact on him and his family. (Nov. 4, 2019 Tr. at 2-4). Deputy Friemoth stated that although his family has confidence in his abilities as a law enforcement officer, the incident "only served to heighten their fears" of him going to work each day. (*Id.* at 3). Deputy Friemoth stated that Tyson "nearly took [his] life" and that he and his family think about the incident "daily." (*Id.*).

{¶37} Although the victims of the aggravated robbery did not provide a victim impact statement to the trial court, the information contained in the PSI indicates that Tyson held a gun within inches of the face of one of the gas station employees. (PSI). Additionally, one of the employees told law enforcement that during the robbery, he was too frightened to even press the panic button near the register for fear he would be shot. (*Id.*). Accordingly, we find that the trial court did not err by finding that the harm caused by the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of Tyson's conduct.

{¶38} In conclusion, the trial court properly considered the purposes and principles of felony sentencing and applied the relevant R.C. 2929.12 factors. Additionally, the trial court's findings regarding the purposes and principles of felony sentencing and the relevant R.C. 2929.12 factors were supported by the record. Furthermore, Tyson's sentence was not unconstitutional under the Eighth Amendment. Moreover, the trial court's consecutive sentence findings are supported by the record. Therefore, we conclude that there is not clear and convincing evidence that Tyson's sentence is not supported by the record or that his sentence is otherwise contrary to law. *See Nienberg*, 2017-Ohio-2920, at ¶ 23.

{¶39} Tyson's first and second assignments of error are overruled.

{¶40} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**